**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

KERRY KENNEDY,

      Plaintiff,

v.

ALAN J. DABBIERE,

      Defendant.

CIVIL ACTION NO.
1:20-CV-00882-AJT-MSN

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS
COUNT II OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

Joel. D. Bush, II
Admitted *Pro Hac Vice*
Joe P. Reynolds
Admitted *Pro Hac Vice*
KILPATRICK TOWNSEND &
STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
(P): 404-815-6500
(F): 404-815-6555
jbush@kilpatricktownsend.com
jreynolds@kilpatricktownsend.com

Benjamin L. Williams (VSB No. 88591)
KILPATRICK TOWNSEND &
STOCKTON LLP
607 14th Street, NW, Suite 900
Washington, DC 20005
(P): 202-481-9945
(F):202-618-6356
blwilliams@kilpatricktownsend.com

*Attorneys for Defendant Alan J. Dabbiere*

Pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6) and 12(b)(7), Defendant Alan J. Dabbiere ("Defendant"), by and through his undersigned counsel, submits this Memorandum of Law in Support of Defendant's Motion to Dismiss Count II of Plaintiff's First Amended Complaint.

## I.    INTRODUCTION

This lawsuit involves an urn located at the property commonly known as Hickory Hill in McLean, Virginia.  The Hickory Hill property plays a unique role in American history, having served as the home of Supreme Court Justice Robert J. Jackson, Senator and Mrs. John F. Kennedy, Senator and Mrs. Robert F. Kennedy, and according to Civil War lore, a place where General George B. McClellan stationed his troops.  Defendant purchased the Hickory Hill property in 2009 from its then-owner, Mrs. Ethel Kennedy.  Plaintiff does not allege – and could not allege – that she was a party to this 2009 real estate transaction.

Six months after closing, a dispute arose between Defendant and Mrs. Ethel Kennedy over whether the nearly 6-foot tall, 5-foot wide urn in front of the residence conveyed in the real estate transaction.  By letter dated June 14, 2010, Mrs. Ethel Kennedy, through counsel, argued the urn did not convey to Defendant because (i) the urn is not a fixture, (ii) the urn did not need to be included in the list of excluded personal property attached to the purchase agreement, and (iii) a provision in the purchase agreement precludes Defendant from relying on representations made in sales brochures and by Mrs. Ethel Kennedy's broker that the urn would convey to Defendant.  ECF 5-10.

Mrs. Ethel Kennedy also told Defendant in the letter that she, in 2010, "*desires* to give the urn to her daughter as a gift."  *Id.* at 3 (emphasis added).  Shortly after Defendant received this letter, Mrs. Ethel Kennedy's daughter, Plaintiff Kerry Kennedy, contacted Defendant and asked

that she be permitted to remove the urn from the Hickory Hill property. Plaintiff complained that the urn had a stronger connection to "Aunt Jackie," Jacqueline Kennedy, rather than to the Hickory Hill property because (i) Jacqueline Kennedy had brought the urn from Hammersmith Farm to the Hickory Hill property in or around late 1955 when she and John F. Kennedy acquired the Hickory Hill property and that (ii) the urn had been a family heirloom of Jacqueline Kennedy which had passed to her from her father, Hugh Auchincloss. ECF 5, ¶ 32.

Based upon these representations, and at Plaintiff's insistence, Defendant agreed to waive any ownership rights in the urn and to allow Plaintiff to remove the urn from the Hickory Hill property after ten years. *Id*. at ¶ 34. Defendant memorialized this agreement in an email, attached as Exhibit 1 to Plaintiff's First Amended Complaint. ECF 13-1.

Since his purchase of the Hickory Hill property a decade ago, Defendant has become a steward of its long and rich history, including working with a local historian on a book written about the storied history of the Hickory Hill property and the families who lived there. ECF 5, ¶ 36. In researching the history of the Hickory Hill property, Defendant came to learn that Plaintiff's June 16, 2010 representations about the origin of the urn, and its purported ties to the childhood home of Jacqueline Kennedy, were incorrect. *Id*. at ¶ 37. In particular, Defendant discovered that the urn had been on the Hickory Hill property for roughly 90 years and through two owners of the Hickory Hill property before the Kennedys. *Id*. at ¶ 38.

In May 2020, Defendant alerted Plaintiff to this mutual mistake and told her that he had agreed to Plaintiff's request to waive his ownership rights in the urn only because "you told me [in 2010] that the urn had come from Hammersmith [Farm] and was a gift from your Aunt Jackie [Kennedy]." ECF 5-13. Plaintiff did not even acknowledge the mistake, let alone agree to correct it. Instead, Plaintiff simply responded, "Thanks for sharing!" ECF 5-14. Plaintiff then filed this

lawsuit, seeking specific performance of the agreement (made by mutual mistake) to allow Plaintiff to remove the urn from the Hickory Hill property after ten years. *See generally* Am. Compl. (ECF 13).

On October 2, 2020, Defendant filed his Counterclaims, Answer, and Affirmative Defenses. ECF 5. Defendant requests that the Court deny specific performance and rescind the June 2010 agreement based on mutual mistake of fact, fraud, unclean hands, and equitable estoppel. *Id*. at ¶¶ 47-83. In response, Plaintiff served a First Amended Complaint to assert a Count II, which seeks a declaratory judgment that the urn did not convey to Defendant in the 2009 real estate transaction and that the urn constitutes the "personal property" of Plaintiff. ECF 13 at ¶¶ 45-50. This claim should be dismissed for four independent reasons.

*First*, Plaintiff was not a party to the 2009 real estate transaction. As a nonparty to the 2009 Purchase Agreement, Plaintiff lacks standing to assert a claim about any rights and obligations arising out of that transaction. This lack of standing deprives the Court of subject matter jurisdiction over Count II.

*Second*, Count II does not present a sufficiently live controversy. Only when the actual parties to the real estate transaction have a "substantial controversy" of "sufficient immediacy and reality" between them will a court have an actual case or controversy under Article III of the Constitution. Until then, a nonparty cannot seek from the court an advisory opinion about the rights arising out of that transaction. This circumstance also deprives the Court of subject matter jurisdiction over Count II.

*Third*, if the Court finds subject matter jurisdiction exists over Count II, the Court should nonetheless decline to render a declaratory judgment because it will not settle the legal relations arising out of the 2009 real estate transaction. Without Mrs. Ethel Kennedy as a party, any decision

about the consequences of the transaction will provide the type of partial relief that weighs against a court's exercising jurisdiction over a request for a declaratory judgment.

*Fourth*, a declaratory judgment is appropriate when a plaintiff requires guidance as to future conduct at a time when the plaintiff is confronted with a decision about what to do and has doubt and uncertainty about what action is legally required.  Here, in sharp contrast, Plaintiff seeks to adjudicate her "rights" resulting from a real estate transaction (1) that took place *over a decade ago*, and (2) to which Plaintiff was not a party.  Because Plaintiff seeks a declaration about rights and responsibilities based on past conduct, Plaintiff cannot meet the requirements of a declaratory judgment action.

Alternatively, even if the Court finds that all of these deficiencies are not fatal to Count II, the Court should dismiss Count II under Rule 12(b)(7), or if the Court finds that Mrs. Ethel Kennedy can be joined to this lawsuit, issue an order requiring Plaintiff to join Mrs. Ethel Kennedy. As a party to the real estate transaction, Mrs. Ethel Kennedy is a "necessary party" under Rule 19 for any adjudication about whether the urn conveyed to Defendant in connection with the 2009 Purchase Agreement.

## II.     BACKGROUND

### A.     Allegations in Plaintiff's First Amended Complaint.

Plaintiff makes the following allegations in the First Amended Complaint.  ECF 13.

In December 2009, Mrs. Ethel Kennedy "entered into a contract with Defendant to convey her home, the real property known as Hickory Hill, at 1147 Chain Bridge Road, McLean."  Am. Compl. ¶ 7 (ECF 13).  Before the 2009 real estate transaction, Mrs. Ethel Kennedy allegedly "gave all ownership rights and title to the Urn that was located at Hickory Hill to her daughter, plaintiff Kerry Kennedy."  *Id.* ¶ 8.  According to Plaintiff, "after Mrs. Ethel Kennedy vacated the Hickory

US2008 17771786 1

Hill property, a dispute arose between plaintiff Kerry Kennedy and defendant Dabbiere" – not

Mrs. Ethel Kennedy and Defendant – "about the ownership of the Urn which had not yet been

removed from the Hickory Hill property." *Id.* ¶ 10.

Plaintiff alleges few details about the dispute over the ownership of the urn. Plaintiff

simply asserts that (1) "[the urn] was her property and did not convey with the [2009] conveyance

of Hickory Hill [from Mrs. Ethel Kennedy] to defendant Dabbiere," *id.* ¶ 11; (2) Defendant

"claimed [in 2010] that the Urn was a fixture which had conveyed with the Hickory Hill real

property," *id.* ¶ 12; and (3) "[i]n fact and law, however, the Urn was not a fixture and did not

convey with the real property" in connection with the 2009 transaction between Defendant and

Mrs. Ethel Kennedy. *Id.* ¶ 13.

Plaintiff alleges that Defendant denied her request to remove the Urn, discussions ensued

between Plaintiff and Defendant, and an agreement between Plaintiff and Defendant was reached

on June 16, 2010, which Defendant memorialized in an email:

> Kerry, the purpose of this email is to memori[alize] our conversation that the Urn
> in the front of Hickory Hill will remain as your property and we give up any rights
> to it conveying with the property and in exchange you agree that the Urn will stay
> in its current place for 10 years from today's date – June 16th, 2010. At that time
> you are free to take the urn. I will sign a copy of this email and send you a signed
> PDF version via email.

*Id.* ¶ 14 & Ex. 1.

In Count I, Plaintiff seeks specific performance of the June 16, 2010 agreement. *Id.* ¶¶ 36-

44. In Count II, Plaintiff seeks a declaratory judgment "[1] that the Urn constitutes [Plaintiff's]

personal property, [2] that it did not convey to defendant Dabbiere when he purchased Hickory

Hill [in 2009], [3] that Ms. [Kerry] Kennedy is entitled to take immediate physical possession of

the Urn, and [4] that she can take all appropriate actions to retrieve the Urn from Hickory Hill." *Id.* ¶ 50.

**B.    Allegations in Defendant's Counterclaims.**

Defendant makes the following allegations in the Counterclaims, Answer, and Affirmative Defenses.  ECF 5.

In or around May 2007, Defendant and his family began searching for a new residence in the northern Virginia area.  Countercl. ¶ 5.  The urn was featured prominently in at least six sales brochures for the Hickory Hill property, each of which was provided to Defendant, *id.* ¶ 10, some as early as 2006 and 2007.  *Id.* ¶ 11.  Unlike other personal possessions of the seller, which were not featured in the sales brochures as unique to the Hickory Hill property, the urn was featured prominently as a unique attribute of the Hickory Hill property for sale.  *Id.* ¶ 12 & Exs. 1-6.  These sales brochures implied that the urn conveyed with the Hickory Hill property, and nowhere did the brochures state or suggest that the urn did not convey.  *Id.* ¶ 12.  Before the closing, the seller's broker for the transaction, Washington Fine Properties (the "Kennedy Broker"), represented to Defendant's wife that the urn was intended to convey with the Hickory Hill property.  *Id.* ¶ 14.

The transaction for the conveyance of the Hickory Hill property to Defendant closed on or about December 23, 2009.  *Id.* ¶ 15.  Based on the sales brochures, the representations by the Kennedy Broker before closing, and the Purchase Agreement, Defendant understood and believed that the urn conveyed with the Hickory Hill property.  *Id.* ¶ 17.

Although Defendant acquired title to the Hickory Hill property in December 2009, Mrs. Ethel Kennedy requested additional time to vacate the Hickory Hill property.  *Id.* ¶ 18.  Mrs. Ethel Kennedy ultimately leased the Hickory Hill property as her residence at a nominal cost until May 2010.  Mrs. Ethel Kennedy vacated the Hickory Hill property on May 31, 2010.  *Id.* Mrs. Ethel

- 6 -

Kennedy made a special arrangement to leave a few personal items on the Hickory Hill property to be retrieved at a later date, including a few outdoor stone planters. *Id.* ¶ 19. Mrs. Ethel Kennedy did not mention anything about the urn being an item that was her personal property to be retrieved by herself (or by anyone else) at a later date. *Id.*

On June 4, 2010, after Mrs. Ethel Kennedy had moved out of the residence on the Hickory Hill property, Defendant's wife received an e-mail at 12:21 pm from an employee of Mrs. Ethel Kennedy, Anne Camas Phelan, stating: "I still haven't had official confirmation from [Plaintiff] about the urn in front of the house. Last I heard a fellow that works with her, was coming to pick it up this week...however, no one has called me back. I'm trying hard not to push this as I am very concerned about the potential damage to the urn, should someone attempt to move it." *Id.* ¶ 20.

After receiving the June 4, 2010 12:21 pm e-mail, Defendant immediately contacted the Kennedy Broker. *Id.* ¶ 23. Just as he had represented to Defendant's wife before the closing that the urn was intended to convey with the Hickory Hill property, the Kennedy Broker represented to Defendant that the urn had been intended to convey with the Hickory Hill property. *Id.*

Following this conversation with the Kennedy Broker, Defendant responded by e-mail on June 4, 2010 at 3:01 pm as follows:

> I really do want to go on record saying the urn should stay. It was talked about as something that stayed with the house in so many pieces of sales literature and that we are confident that the intent of both parties was for it to convey as part of the sale. It really is an important part of the façade of the home. I hope this can be understood by everyone and that at the end we can all agree that this is the right 'home' for this piece for the future. Please let's have a conversation and agreement on this; and I hope no one just shows up to try and pick it up. I did speak with the real estate agents that represented the Kennedy's just so that I could be certain about this and they did confirm it was intended to convey – and that is why it was written up in such detail. They also put in a call to Joe Hakim [a representative of the Kennedy family] so that he would know our position to see if this could be resolved quickly.

US2008 17771786 1

*Id.* ¶ 24.

In response to a telephone call placed by Defendant's real estate attorney, Eleanor D. Zappone, an attorney with Arent Fox, represented to Defendant's real estate counsel, in a letter dated June 14, 2010, that "[t]he urn was removed from the childhood home of Mrs. John F. Kennedy [Jacqueline "Jackie" Kennedy Onassis] and she had it placed on the front lawn of Hickory Hill when she and President John F. Kennedy owned Hickory Hill." *Id.* ¶ 28 & Ex. 10 (the "June 14, 2010 letter"). The June 14, 2010 letter further states that, when Mr. and Mrs. John F. Kennedy "sold Hickory Hill to Robert and Ethel Kennedy, the urn was given to Mrs. [Ethel] Kennedy as a gift." *Id.*

The June 14, 2010 letter suggested that Mrs. Ethel Kennedy was, at that time, the owner of the urn but that she wanted to give the urn to Plaintiff as a gift: "Mrs. Kennedy *desires to give* the urn to her daughter as a gift. I do not doubt that Mrs. Kennedy had no intention, either at the time we entered into the Purchase Agreement or at closing, of leaving the urn to further enhance the historical value of the Property." *Id.* ¶ 29 & Ex. 10 at 2 (emphasis added). The June 14, 2010 letter from Eleanor D. Zappone, and on behalf of Mrs. Ethel Kennedy, thus indicated that, as of that date in 2010, Mrs. Ethel Kennedy as yet had not gifted the urn to Plaintiff, and only that Mrs. Ethel Kennedy, roughly six months after the closing of the real estate transaction, merely "desire[d]" to gift the urn to Plaintiff. *Id.* ¶ 30.

On the evening of June 16, 2010, Plaintiff contacted Defendant by telephone (the "June 16, 2010 telephone call"). *Id.* ¶ 32. During the June 16, 2010 telephone call, Plaintiff made an impassioned plea, contending that the urn had a stronger connection to "Aunt Jackie," Jacqueline Kennedy, rather than to the Hickory Hill property. *Id.* In particular, Plaintiff represented that (1) Jacqueline Kennedy had brought the urn from Hammersmith Farm to the Hickory Hill property in

or around late 1955 when she and John F. Kennedy acquired the Hickory Hill property and that (2) the urn had been a family heirloom of Jacqueline Kennedy which had passed to her from her stepfather, Hugh Auchincloss. *Id.*

Within one hour of the June 16, 2010 telephone call, and based upon the representations Plaintiff made during that telephone call, Defendant agreed to waive any ownership rights in the urn and to allow Plaintiff to remove the urn from the Hickory Hill property after ten years. *Id.* at ¶ 34. Had Plaintiff not made these representations during the June 16, 2010 telephone call, Defendant would not have capitulated to Plaintiff's request and made this agreement. *Id*.

On October 2, 2020, Defendant filed his Counterclaims, Answer, and Affirmative Defenses. ECF 5. In Count I, Defendant seeks rescission of the June 16, 2010 agreement based on mutual mistake – namely, that Plaintiff's June 16, 2010 representations about the origins of urn were incorrect. *Id.* ¶¶ 47-59. In Count II, Defendant seeks rescission of the June 16, 2010 agreement based on fraudulent inducement, alleging that Plaintiff's June 16, 2010 representations were made either innocently or negligently. *Id.* ¶¶ 60-68. Finally, in Count III, Defendant seeks rescission of the June 16, 2010 agreement based on unclean hands and equitable estoppel, alleging that Plaintiff's conduct with respect to the formation, performance, and enforcement of the June 16, 2010 agreement constitutes inequitable and wrongful conduct. *Id.* ¶¶ 69-83.

### III.     ARGUMENT

#### A.     Standard of Review.

Defendant seeks dismissal of Count II under Rule 12(b)(1) for lack of subject matter jurisdiction and dismissal of Count II under Rule 12(b)(6) for failure to state a claim. Alternatively, Defendant seeks dismissal of Count II under Rule 12(b)(7), or if the Court finds that Mrs. Ethel Kennedy can be joined to this lawsuit, an order requiring Plaintiff to join Mrs. Ethel Kennedy.

- 9 -

When considering a motion under Rule 12(b)(1), the Court assumes that all factual allegations in the complaint are true, *see Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982), but the plaintiff has the burden of proving subject matter jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991). "To determine whether subject matter jurisdiction exists, the reviewing court 'may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Mobilization Funding, L.L.C. v. W.M. Jordan Co., Inc.*, No. 4:18-CV-72, 2018 WL 6257109, at *2 (E.D. Va. Nov. 29, 2018) (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)). "A party moving for dismissal for lack of subject matter jurisdiction should prevail only if material jurisdictional facts are not in dispute and the moving party is entitled to prevail as matter of law." *Id.*

When considering a motion under Rule 12(b)(6), the Court assumes that all factual allegations in the complaint are true, although "threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The Court "may consider documents attached to the complaint, . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). A complaint must have sufficient factual allegations to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

When considering a motion under Rule 12(b)(7), the party asserting the Rule 12(b)(7) motion has the burden of showing that a person not joined is necessary and indispensable, *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005), and a court may consider

US2008 17771786 1

evidence outside of the pleadings. *Marina One, Inc. v. Jones*, 22 F. Supp. 3d 604, 607 (E.D. Va. 2014).

**B.  The Court Lacks Subject Matter Jurisdiction Over Count II.**

Under the Declaratory Judgment Act, "[i]n any actual case or controversy within its jurisdiction . . . any Court of the United States . . . may declare the rights and other legal relations of any interested party facing such declaration." 28 U.S.C § 2201(a). To satisfy the case or controversy requirement, Plaintiff must prove "the 'conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'" *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citation omitted).

To establish jurisdiction, Plaintiff must also carry the burden of proving both constitutional and prudential standing. *Bishop v. Bartlett*, 575 F.3d 419, 423-24 (4th Cir. 2009). "There are three components of constitutional standing: (1) the plaintiff must allege that he or she suffered an actual or threatened injury that is not conjectural or hypothetical, (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision must be likely to redress the injury." *Miller*, 462 F.3d at 316. To possess prudential standing, Plaintiff "must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties." *Bishop*, 575 F.3d at 423.

**i.  Plaintiff lacks standing to challenge the 2009 real estate transaction because she is not a party to that transaction.**

Plaintiff seeks a declaration that the urn did not convey to Defendant when he purchased the Hickory Hill property in 2009 from Mrs. Ethel Kennedy and that the urn constitutes Plaintiff's personal property. Am. Compl. (ECF 13) ¶ 50. Plaintiff alleges "that the Urn constitutes personal property, not a fixture, that did not convey with the [2009] sale of Hickory Hill to defendant

- 11 -

Dabbiere." *Id.* ¶ 47.  Plaintiff also alleges that Defendant, on the other hand, "contends that the Urn is a fixture" and that, "because the Urn is a fixture, it conveyed to him along with the other real property . . . when Mrs. Ethel Kennedy sold Hickory Hill to him" in 2009.  *Id.* ¶ 46.

At bottom, Plaintiff asks the Court to decide whether the 2009 Purchase Agreement between Defendant and Mrs. Ethel Kennedy transferred ownership of the urn to Defendant.  *Id.* ¶ 50.  The rights and obligations arising out of that 2009 real estate transaction, including whether the urn conveyed to Defendant, are set forth in the Purchase Agreement between Mrs. Ethel Kennedy and Defendant dated December 23, 2009.[1]  Declaration of Alan J. Dabbiere ("Dabbiere Decl.") ¶ 2, Ex. 1.  Therein, the parties agreed "███████████████████████" as well as "████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████."  *Id.* at 1.  Plaintiff is not a party to the 2009 Purchase Agreement.  *Id.*

Plaintiff seemingly claims that she has an "interest" in the interpretation of the 2009 Purchase Agreement.   However, Plaintiff must assert her own "legal rights and interests and cannot rest [her] claim to relief on the legal rights or interests of third parties."  *Holloway v. City of Virginia Beach, Virginia*, No. 2:18-CV-69, 2020 WL 4758362, at *7 (E.D. Va. Aug. 17, 2020) (citation omitted).  As a non-party to the Purchase Agreement, Plaintiff does not have any legal right or interest in it.  *Id.*  In fact, the Purchase Agreement contains an ████████ clause.  Dabbiere Decl. ¶ 2, Ex. 1, Purchase Agreement, ¶ 15.6.

---

[1]  Because the 2009 Purchase Agreement sets forth the rights and obligations of the parties to the real estate transaction, Am. Compl. ¶ 10, and is otherwise integral to the complaint and authentic, the Court may consider it in ruling on Defendant's motion to dismiss.  *See Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013); Fed. R. Civ. P. 10(c).

US2008 17771786 1

It is well-established that a nonparty to a contract does not have standing to sue on the contract or otherwise to seek a declaratory judgment regarding any rights and obligations under a contract to which it is not a party. For example, in *Murphy v. McCabe, Weisberg & Conway, LLC*, plaintiffs requested the Court enter a declaratory judgment regarding several deeds of trust on a property. No. 1:17-CV-01095, 2018 WL 10562054, at *1 (E.D. Va. Feb. 27, 2018), *aff'd sub nom. Murphy v. McCabe, Weisberg & Conway, L.L.C.*, 735 F. App'x 68 (4th Cir. 2018). In particular, plaintiffs alleged the first position deed of trust was "fraudulent" and asked the Court to declare that the party to the second position deed of trust, with whom plaintiffs allegedly had an option contract, was the "true fee simple owner, but subject to [plaintiffs'] option." *Id.* The Court dismissed the case with prejudice for lack of standing, holding that "[b]ecause a non-party to a contract does not have standing to sue on the contract, Plaintiffs lack standing to bring this [declaratory judgment] case." *Id.* (citing *Orlando Residence, Ltd. v. Nelson*, 565 F. App'x 212, 220 (4th Cir. 2014) and *SunTrust Banks, Inc. v. Robertson*, No. 2:09-CV-197, 2011 WL 13237797, at *5 (E.D. Va. Apr. 6, 2011)).

Similarly, in *Capitol Property Management Corporation v. Nationwide Property and Casualty Insurance Company*, a property management company ("Capitol") sought to require Nationwide to pay Capitol under the terms of an insurance policy between Nationwide and a condominium association (the "Association") that hired Capitol to serve as property manager. 261 F. Supp. 3d 680, 683-86 (E.D. Va. 2017). While the Association had assigned to Capitol its rights under the policy with respect to an "Insurance Claim Processing Fee," the Association had not assigned its rights with respect to a "Construction Management Fee." *Id.* at 685-86. As a result, the Court held that Capitol lacked standing to assert its claim for the Construction Management Fee. *Id.* at 687.

- 13 -

In particular, the Court observed that, in Virginia, "[t]he general rule at common law is that an action on a contract must be brought in the name of the party in whom the legal interest is vested, and this legal interest is ordinarily vested only in the promisee or promisor; consequently, they or their privies are generally the only persons who can sue on the contract." *Id.* at 687-88 (citing *Cemetery Consultants, Inc. v. Tidewater Funeral Directors Association, Inc.*, 219 Va. 1001, 254 S.E.2d 61, 62 (1979)). While Capitol "may have an interest in the Association receiving payment from its insurer that would help it meet its contractual obligation to pay Capitol for services provided," Capitol did not have any "substantive right" to sue under the insurance policy. *Id.* at 688-89. "Without substantive rights under the Policy, it necessary follows that Capitol lacks standing to pursue the claim for the Construction Management Fee." *Id.* at 689.

*Murphy* and *Capitol Property Management* are consistent with cases throughout the country for the proposition that a nonparty does not have standing to seek a declaratory judgment regarding the rights and obligations under a contract to which it is a nonparty. *See, e.g.*, *MeccaTech v. Kiser*, No. 8:05-CV-570, 2006 WL 2690063, at *5 & n.7 (D. Neb. Sept. 18, 2006) ("This finding is in line with decisions from other districts, which have found that a lack of privity of contract indicates a lack of standing to seek a declaratory judgment."); *Mardian Equip. Co. v. St. Paul Fire & Marine Ins. Co.*, No. CV-05-2729, 2006 WL 2456214, at *5-6 (D. Ariz. Aug. 22, 2006) (holding that plaintiff lacked standing to seek a declaratory judgment concerning the meaning of an insurance policy because it was not a named insured on the policy); *Newcal Indus., Inc. v. Ikon Office Sols., Inc.*, No. C04-2776 FMS, 2004 WL 3017002, at *7-9 (N.D. Cal. Dec. 23, 2004) ("In cases in which plaintiffs have sought declarations regarding rights and obligation under a contract to which it is not a party, other district courts have similarly found deficiencies in standing.").

US2008 17771786 1

Because Plaintiff has no legal interest in the 2009 real estate transaction between Defendant and Mrs. Ethel Kennedy, Plaintiff cannot meet any of Article III's standing requirements. As a nonparty, Plaintiff has not suffered "an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent." *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002). Nor can Plaintiff meet the traceability requirement, which "ensures that it is likely the plaintiff's injury was caused by the challenged conduct of the defendant, and not by the independent actions of third parties not before the court." *Id.*

The 2009 real estate transaction had nothing to do with Plaintiff; even now, there is no evidence that Mrs. Ethel Kennedy believes Defendant breached the 2009 Purchase Agreement, notwithstanding that they may have had a "fixture" dispute over a decade ago. Plaintiff's dispute may actually be with Mrs. Ethel Kennedy – if Mrs. Ethel Kennedy, in fact, gifted the urn to Plaintiff before December 2009, as Plaintiff alleges, but the urn conveyed from Mrs. Ethel Kennedy to Defendant in the 2009 real estate transaction. This circumstance further establishes that Plaintiff cannot meet the redressability prong, which "requires that it be likely, and not merely speculative, that a favorable decision from the court will remedy the plaintiff's injury." *Id.* On the contrary, Plaintiff's declaratory judgment claim based on the 2009 real estate transaction seeks to address a purported "injury" to Mrs. Ethel Kennedy, not to Plaintiff.

In short, because Plaintiff was not a party to the 2009 real estate transaction, Plaintiff lacks standing to obtain a declaratory judgment about the rights and obligations arising out of that transaction, including whether the urn conveyed from Mrs. Ethel Kennedy to Defendant in connection with the 2009 Purchase Agreement.

US2008 17771786 1

### ii. Count II does not satisfy the case or controversy requirement.

"[F]or a district court to have jurisdiction to issue a declaratory judgment . . . the dispute must be a 'case or controversy' within the confines of Article III of the United States Constitution– the 'constitutional' inquiry." *Rowe v. Clarke*, No. 3:18-CV-780, 2020 WL 365103, at *5 (E.D. Va. Jan. 22, 2020) (quoting *White v. Nat'l Union Fire Ins.*, 913 F.2d 165, 167 (4th Cir. 1990)); *see also Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) ("A case meets the actual controversy requirement only if it presents a controversy that qualifies as an actual controversy under Article III of the Constitution.").

Whether the subject of a declaratory judgment action is a sufficiently live controversy rather than an abstract question "is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co.*, 312 U.S. at 273); *see also Miller v. Augusta Mut. Ins. Co.*, 157 F. App'x 632, 637 (4th Cir. 2005) ("Although declaratory judgments are frequently sought in advance of the full harm expected, they must still present a justiciable controversy rather than abstract, hypothetical or contingent questions.").

"To state a claim for relief under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiff[] must adequately allege a dispute that is: (1) 'definite and concrete, touching the legal relations of parties having adverse legal interests'; (2) 'real and substantial'; and (3) 'admit[ting] of specific relief through a decree of a conclusive character, as distinguished from an opinion

advising what the law would be upon a hypothetical state of facts.'" *In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19-MD-2915-AJT-JFA, 2020 WL 5629790, at *24 (E.D. Va. Sept. 18, 2020) (quoting *MedImmune*, 549 U.S. at 127).

In this case, Defendant and Mrs. Ethel Kennedy had, more than a decade ago, a "substantial controversy" about the ownership of the urn of "sufficient immediacy and reality." *See* 5-10. The June 16, 2010 letter raised three issues about the ownership of the urn: (i) whether the urn conveyed as a fixture, (ii) whether the urn conveyed because it was not included in the list of excluded personal property attached to the purchase agreement, and (iii) whether the urn conveyed based on statements made in sales brochures and by Mrs. Ethel Kennedy's broker. *Id*.

Here, Plaintiff apparently seeks to adopt Mrs. Ethel Kennedy's 2010 arguments under the 2009 Purchase Agreement as her own. Am. Comp. ¶ 50 (seeking a "finding . . . that the Urn constitutes Ms. Kennedy's personal property, that it did not convey to defendant Dabbiere when he purchased Hickory Hill, that Ms. Kennedy is entitled to take immediate physical possession of the Urn"). But this is not a "substantial controversy" of "sufficient immediacy and reality" between Defendant *and Plaintiff*, because each of these arguments depends upon the legal relations between Defendant *and Mrs. Ethel Kennedy*.

*First*, the question of whether the urn is a fixture under Virginia law is a controversy between Defendant and Mrs. Ethel Kennedy. To adjudicate this question, the parties and the Court must look to the Purchase Agreement because that is where the parties set forth the terms of what Defendant purchased from Mrs. Ethel Kennedy. *See* Dabbiere Decl. ¶ 2 & Ex. 1 at 1. Under Virginia law, parties to a real estate contract "may fix the character of the property by agreement, express or implied." *Dowdy v. Silverstein*, 1981 WL 180584, at *2-3 (Va. Cir. Ct. Aug. 4, 1981). Moreover, on the issue of fixtures, the intent of the parties is the chief test in determining whether

- 17 -

the chattel has been converted into real property. *See, e.g.*, *Taco Bell of Am., Inc. v. Commonwealth Transp. Com'r*, 282 Va. 127, 131-33, 710 S.E.2d 478, 481-82 (2011) (reversing lower court after concluding the issue of whether items were fixtures or personal property was sufficient to submit to the jury); *State Highway & Transp. Com'r v. Edwards Co.*, 220 Va. 90, 94, 255 S.E.2d 500, 503 (1979) (setting forth three tests to determine whether an item of personal property placed upon realty itself becomes real property: "(1) annexation of the property to the realty, (2) adaptation to the use or purpose to which that part of the realty with which the property is connected is appropriated, and (3) the intent of the parties[,]" which is "the chief test to be considered in determining whether the chattel has been converted into real property.").

*Second*, the question of whether the urn conveyed to Defendant because it is not listed on Exhibit F to the purchase agreement is a controversy between Defendant and Mrs. Ethel Kennedy. Exhibit F, entitled "███████████████████," excludes as personal property such items as a █████████████████████████████████████████████ ███████. Dabbiere Decl. ¶ 2, Ex. 1 at Exhibit F (List of Excluded Personal Property). Importantly, Exhibit F does not identify the urn as "████████████████." *Id.* In June 2010, counsel for Mrs. Ethel Kennedy argued that the urn did not need to be included on Exhibit F because "[t]he list of excluded property was only intended to exclude from conveyance at closing chattels situated on the improvements and used in connection with such improvements; it was not intended to exclude chattels that would not be deemed a fixture under applicable law." ECF 5-10 at 3. In other words, Mrs. Ethel Kennedy's counsel argued that Exhibit F was only meant to include items that constitute both personal property and fixtures under Virginia law. *Id.* The plain language of the Purchase Agreement undercuts this argument but, either way, this dispute is between Defendant and Mrs. Ethel Kennedy.

- 18 -

*Finally*, Defendant contends the urn conveyed because the sales brochures and the Kennedy Broker represented that the urn would convey with the property. Countercl. (ECF 5) ¶ 17. Counsel for Mrs. Ethel Kennedy rejected this claim on the grounds of an "entire agreement" provision in the 2009 Purchase Agreement and also argued that the real estate brokers who prepared the marketing materials "did not have an agency relationship with Mrs. Kennedy at the time the Purchase Agreement was negotiated by the parties." ECF 5-10 at 2-3. Again, this dispute is between Defendant and Mrs. Ethel Kennedy – not between Defendant and Plaintiff.

In sum, the dispute over whether the urn conveyed to Defendant in 2009 as a result of the real estate transaction between Defendant and Mrs. Ethel Kennedy is a controversy between Defendant and Mrs. Ethel Kennedy. On this question, Plaintiff and Defendant have no present adverse legal interests. Plaintiff's request thus impermissibly presents an abstract, hypothetical question about the 2009 Purchase Agreement between Defendant and Mrs. Ethel Kennedy, and how the urn should be treated under this 2009 transaction and between the parties to that transaction. *Augusta Mut. Ins. Co.*, 157 F. App'x at 637 (a declaratory judgment action must "present a justiciable controversy rather than abstract, hypothetical or contingent questions."). Moreover, Plaintiff's Count II does not present a "sufficiently live controversy" between *Plaintiff* and Defendant. *Maryland Cas. Co.*, 312 U.S. at 273. As a nonparty to the Purchase Agreement, Plaintiff cannot properly bring an action about the obligations and consequences under the 2009 Purchase Agreement any more than other family members of Mrs. Ethel Kennedy or any more than other strangers to that contract. *See Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 588 (E.D. Va. 1992) (finding no justiciable case or controversy between plaintiffs and a nonparty to a license agreement, when plaintiffs sought a declaration that plaintiffs had properly terminated the license agreement).

- 19 -

For these reasons, the Court does not have "jurisdiction to issue a declaratory judgment" on Count II of Plaintiff's First Amended Complaint. *White*, 913 F.2d at 167; *see also Verosol B.V.*, 806 F. Supp. at 588 (dismissing case for lack of subject matter jurisdiction because "there is no justiciable controversy between plaintiffs and [the nonparty]; [the nonparty's] interest in this controversy, as a matter of degree, is far too remote to make it a proper party to this declaratory judgment action"); *Volvo Constr. Equip. N. Am.*, 386 F.3d at 592 (citing *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (addressing motion to dismiss under Rule 12(b)(1))). Plaintiff likewise fails to state a claim for relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. *See In re Capital One Consumer Data Sec. Breach Litig.*, 2020 WL 5629790, at *24 (addressing motion to dismiss under Rule 12(b)(6)).

### C. The Court Should Decline to Address Count II.

"If a district court possesses declaratory judgment jurisdiction, it may nonetheless, in the exercise of its discretion, decline to entertain the action." *Volvo Const. Equip. N. Am.*, 386 F.3d at 594. A district court is obliged to rule on the merits of a declaratory judgment action when declaratory relief "will serve a useful purpose in clarifying and settling the legal relations in issue," and "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (citation omitted).

Adjudicating Count II will not accomplish either of these aims. If anything, adjudicating Count II creates the risk of inconsistent obligations and due process violations. For example, assume that Plaintiff secures a judgment that she has ownership rights in the urn, as she alleges, as a result of an alleged conveyance between Mrs. Ethel Kennedy and Plaintiff before December 2009. Am. Compl. ¶ 8. More than a decade ago, Mrs. Ethel Kennedy asserted just the opposite: Mrs. Ethel Kennedy's counsel represented to Defendant that she "*desires* [in 2010] to give the urn

to her daughter as a gift," implying that she had not already done so.  ECF 5-10 at 3 (emphasis added).  Plaintiff and Mrs. Ethel Kennedy's positions are completely inconsistent, and adjudicating Count II would require the Court to resolve this contradiction.  Yet, because Mrs. Ethel Kennedy is not a party to this lawsuit, Mrs. Ethel Kennedy will not be bound by any declaratory judgment in this action, including any judgment about the legal relations between Plaintiff and Mrs. Ethel Kennedy.  *See, e.g.*, *Duckett v. Fuller*, 819 F.3d 740, 744 (4th Cir. 2016) (setting forth the exceptions to the "deep-rooted historic tradition that everyone should have his own day in court" with a "full and fair opportunity to litigate the claims and issues," none of which apply here); *Verosol B.V.*, 806 F. Supp. at 587 ("nonparties are not bound by declaratory judgments").

As another example, Plaintiff could secure a judgment that she had ownership rights in the urn as a result of a conveyance between Mrs. Ethel Kennedy and Plaintiff before December 2009, but Defendant could secure a judgment that the urn conveyed to Defendant in the real estate transaction because it is a fixture and because it was not listed on Exhibit F as "excluded personal property."  Would such a result mean that Plaintiff could assert a claim against Mrs. Ethel Kennedy for conveying the urn, even though Mrs. Ethel Kennedy relinquished those rights to Plaintiff before the 2009 real estate transaction?  Or, in light of the statements made in the sales brochures and by the Kennedy Broker, could Defendant assert a claim against Mrs. Ethel Kennedy on the grounds that Mrs. Ethel Kennedy represented she would be conveying something to which she no longer had any ownership rights?  Regardless of the outcome, adjudicating these questions implicates the legal relations between Defendant, Plaintiff, and Mrs. Ethel Kennedy but will not "terminate and afford" Defendant, Plaintiff, and Mrs. Ethel Kennedy "'from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"  *Volvo Const. Equip. N. Am., Inc.*, 386 F.3d at 594 (citation omitted).

What's more, if Defendant or Mrs. Ethel Kennedy elected to file suit seeking to "███████

████████████████████████████████████," the 2009 Purchase Agreement provides

that "████████████████████████████████████████████████████████

███████████████." Dabbiere Decl. ¶ 2, Ex. 1, Purchase Agreement, ¶ 15.15.  Adjudicating

Plaintiff's declaratory judgment claim would seemingly have no impact on Defendant or Mrs.

Ethel Kennedy's ability to file suit against the other and obviously no impact on their opportunity

to avail themselves of this ███████ provision.  Simply put, Plaintiff seeks to adjudicate rights

and obligations arising out of the 2009 Purchase Agreement in an action that may not be binding

on Mrs. Ethel Kennedy and in circumstances in which Defendant, if he prevails, is not entitled to

███████████  Am. Compl. ¶ 50.  Defendant and Mrs. Ethel Kennedy agreed that, in any

dispute under the 2009 Purchase Agreement, ████████████████████████████████

████████. Dabbiere Decl. ¶ 2, Ex. 1, Purchase Agreement, ¶ 15.15.   Plaintiff's declaratory

judgment claim constitutes an end run around the ███████ provision of the Purchase

Agreement.

These non-exhaustive examples illustrate why the declaratory judgment claim should be

dismissed, even if the Court concludes that it may exercise jurisdiction.

**D.       Count II Fails to State a Claim for Relief.**

Plaintiff seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §

2201.  Am. Compl. ¶ 4.  The Declaratory Judgment Act "is remedial only and neither extends

federal courts' jurisdiction nor creates any substantive rights."   *CGM, LLC v. BellSouth*

*Telecomm., Inc.*, 664 F.3d 46, 55 (4th Cir. 2011) (citation omitted).   A case is appropriate for

declaratory judgment when "a plaintiff has an objective and reasonable apprehension of *future*

litigation, which is of sufficient immediacy and reality, that a declaration of legal rights 'will

- 22 -

terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.'" *F.D.I.C. v. Bd. of Sup'rs of Arlington Cty.*, No. 1:11-CV-1394 AJT-TRJ, 2012 WL 3017862, at *4 (E.D. Va. July 23, 2012) (emphasis in original).

On the other hand, "an adjudication of past conduct does not satisfy the requirements of a declaratory judgment action," and "a declaratory judgment action simply is 'not an appropriate remedy for past conduct.'" *Id.* (citing *Beazer Homes Corp. v. VMIF/Anden Southbridge Venture, L.P.*, 235 F. Supp. 2d 485, 494 (E.D. Va. 2002)); *see also Davison v. Plowman*, 247 F. Supp. 3d 767, 782 (E.D. Va. 2017), *aff'd*, 715 F. App'x 298 (4th Cir. 2018) (rejecting request for declaratory judgment because "any declaratory judgment entered here would necessarily address only the constitutionality of defendant's past acts" and declaratory relief "is reserved for forward looking actions").

Plaintiff seeks an adjudication of past conduct—whether the urn conveyed from Mrs. Ethel Kennedy to Defendant in the 2009 real estate transaction. Am. Compl. ¶ 50 ("Ms. Kennedy seeks a finding, declaration and the entry judgment by the Court that the Urn constitutes Ms. Kennedy's personal property, that it did not convey to defendant Dabbiere when he purchased Hickory Hill . . ."). Indeed, Plaintiff's request for a declaration that she "is entitled to take immediate physical possession of the Urn, and that she can take all appropriate actions to retrieve the Urn from Hickory Hill," *id.*, is a thinly-veiled action for detinue, a claim for which the statute of limitations expired many years ago. *See Fin. Pac. Leasing, Inc. v. Blackwater Transp., Inc.*, No. 2:14-CV-134, 2015 WL 403993, at *6 (E.D. Va. Jan. 28, 2015) ("[a]n action for detinue lies when a party unlawfully withholds the personal property of another."); *Vines v. Branch*, 244 Va. 185, 189-90, 418 S.E.2d 890, 893-94 (1992) (discussing trespass, trover, detinue, and assumpsit as actions a party may bring related to personal property). In Virginia, the statute of limitations for detinue is five years.

- 23 -

*See Professionals I. Inc. v. Pathak*, 47 Va. Cir. 476 (1998) (holding Va. Code § 8.01-243(B) applies to a detinue claim because it is "an act directed at the plaintiffs property, not against the individual").

Similarly, Plaintiff's request for a declaration that, under the 2009 real estate transaction, "the Urn constitutes personal property, not a fixture, that did not convey with the sale of Hickory Hill to defendant Dabbiere," Am. Compl. ¶ 47, seemingly constitutes a claim for Defendant's purported breach of the 2009 Purchase Agreement. However, in Virginia, the limitations period for breach of contract is five years. Va. Code § 8.01-246(2). In short, because a declaratory judgment is not proper to adjudicate past conduct (and past conduct that in this circumstance is barred by applicable statutes of limitation), Plaintiff's claim should be dismissed under Rule 12(b)(6) for this additional reason.

### E. Alternatively, Dismissal of Count II Is Appropriate Under Rule 12(b)(7) or Joinder of Mrs. Ethel Kennedy as a Party to Count II is Necessary.

Alternatively, and if the Court denies Defendant's motion to dismiss under Rules 12(b)(1) and (6), Defendant requests that the Court dismiss Count II under Rule 12(b)(7), or if the Court finds that Mrs. Ethel Kennedy can be joined to this lawsuit, an order requiring Plaintiff to join Mrs. Ethel Kennedy as a party to Count II. Under Rule 12(b)(7), a party may file a motion asserting that the plaintiff has failed to join a necessary party under Rule 19. When considering a motion under Rule 12(b)(7), the Court faces a two-step inquiry. *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999). The court first must determine whether a party "is necessary to a proceeding because of its relationship to the matter under consideration" pursuant to Rule 19(a). *Id.* (internal quotations and citations omitted).

Rule 19 defines a party as necessary in two circumstances: (1) if "in that [party's] absence, the court cannot accord complete relief among existing parties," Fed. R. Civ. P. 19(a)(1)(A); and

US2008 17771786 1

(2) when "that [party] claims an interest relating to the subject of the action" and adjudicating the action in that party's absence could impede its ability to protect the interest or leave an existing party subject to risk of inconsistent obligations, Fed R. Civ. P. 19(a)(1)(B). If the party is necessary, the court will join it into the action. *Owens–Illinois, Inc.*, 186 F.3d at 440.

Rule 19 considers joinder feasible for an absent party "who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction." Fed. R. Civ. P. 19(a)(1); *see also E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) ("Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." (citing *Tick v. Cohen*, 787 F.2d 1490, 1493 (11th Cir. 1987))).

If the court cannot join the party, however, the court must then determine whether that party is indispensable pursuant to Rule 19(b). *Id.* Rule 19(b) asks whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed," and includes several factors for the Court to consider: "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b). If the party is indispensable, the court must dismiss the action. *Owens–Illinois, Inc.*, 186 F.3d at 440.

"In applying Rule 19, the Fourth Circuit has found that '*all parties to a contract*, and others having a substantial interest in it, are necessary parties.'" *ADI Constr. of Va. LLC v. Bordewick*, No. 1:13-CV-598-JCC-IDD, 2013 WL 3730084, at *3 (E.D. Va. July 12, 2013) (quoting *Delta*

US2008 17771786 1

*Financial Corp. v. Paul D. Comanduras & Assoc.*, 973 F.2d 301, 305 (4th Cir. 1992)) (emphasis added); *see also Mobilization Funding, L.L.C.*, 2018 WL 6257109, at *10 ("Given that the Subcontract Agreement between Jordan and Mexarg is such a core part of this action, the Court finds that Mexarg is a necessary party under Rule 19(a)."). As discussed above, Mrs. Ethel Kennedy is a party to the 2009 Purchase Agreement and otherwise has a substantial interest in any adjudication of the duties and obligations arising from that agreement. *See* Dabbiere Decl. ¶ 2, Ex. 1. As a result, Mrs. Ethel Kennedy is a "necessary" party under Rule 19.

Mrs. Ethel Kennedy is likewise an "indispensable" party. As discussed in section III.C, "the high potential for factual and legal whipsawing indicates that the parties will be prejudiced by any judgment rendered in the absence of [Mrs. Ethel Kennedy] and, therefore, such a resolution would not be adequate." *Owens–Illinois, Inc.*, 186 F.3d at 441-42. As for the second factor, Plaintiff seeks to adjudicate the rights and obligations under a transaction to which she was not a party, so there is no way to tailor a remedy to lessen or avoid the potential for prejudice in this case. *Id.* at 442. Finally, there is an adequate remedy if Count II were dismissed for nonjoinder; as discussed, Defendant or Mrs. Ethel Kennedy can file suit against the other and avail themselves of the █████████ provision in the 2009 Purchase Agreement, should a dispute between Defendant or Mrs. Ethel Kennedy actually exist. *Id.*

While Mrs. Ethel Kennedy is both necessary and indispensable under Rule 19, and it appears that her joinder would not destroy subject matter jurisdiction, Mrs. Ethel Kennedy does not appear to be subject to personal jurisdiction for Plaintiff's declaratory judgment claim. To the best of Defendant's knowledge, Mrs. Ethel Kennedy resides in, and is a domiciliary of, Florida. Accordingly, it appears that adding Mrs. Ethel Kennedy as a plaintiff would not destroy the Court's diversity jurisdiction in this case, since Defendant is a domiciliary of Virginia. Additionally, under

US2008 17771786 1

the "principal purpose" test, courts must "look beyond the pleadings and arrange the parties according to their sides in the dispute" and "determine the primary issue in controversy and then align the parties according to their positions with respect to that issue." *Mobilization Funding, L.L.C.*, 2018 WL 6257109, at *4 (quoting *Jackson v. Home Depot U.S.A., Inc.*, 880 F.3d 165, 172 (4th Cir. 2018)). While Plaintiff and Mrs. Ethel Kennedy may be aligned with respect to certain issues, Plaintiff and Mrs. Ethel Kennedy appear to be at odds with respect to whether Mrs. Ethel Kennedy gifted the urn to Plaintiff, and if so, when – one of the primary issues in Plaintiff's declaratory judgment claim. *Compare* June 14, 2010 Arent Fox letter (ECF 5-10), *with* Am. Compl. ¶ 8 (ECF 13). Even so, adding Mrs. Ethel Kennedy, who appears to be domiciled in Florida, as a party-defendant would not destroy the Court's diversity jurisdiction.

However, Mrs. Ethel Kennedy is likely not subject to personal jurisdiction for Plaintiff's declaratory judgment claim. Plaintiff asks the Court to declare that the urn is her "personal property" because, before the 2009 real estate transaction, Mrs. Ethel Kennedy allegedly "gave all ownership rights and title to the Urn that was located at Hickory Hill to her daughter, plaintiff Kerry Kennedy." Am. Compl. ¶ 8. On its face, this issue between Plaintiff and Mrs. Ethel Kennedy, who has seemingly been a nonresident of Virginia for more than a decade, does not appear to "create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Accordingly, Plaintiff's declaratory judgment claim in Count II should be dismissed under Rule 12(b)(7). *Owens–Illinois, Inc.*, 186 F.3d at 440.

Alternatively, if Count II is not dismissed under Rules 12(b)(1), 12(b)(6), or 12(b)(7), Defendant requests that the Court join Mrs. Ethel Kennedy to this lawsuit, order Plaintiff to do so, or dismiss Count II. *Owens–Illinois, Inc.*, 186 F.3d at 440; *see, e.g.*, *Calderon v. Aurora Loan Serv., Inc.*, No. 1:10-CV-129-JCC, 2010 WL 2306343, at *7-8 (E.D. Va. June 3, 2010) (entering

order requiring plaintiff to add necessary parties to the action); *GMG Gesellschaft Fur Modulare Greifersysteme MbH v. Robotiq Inc.*, No. 2:16-CV-573, 2017 WL 11505255, at *3 (E.D. Va. Mar. 30, 2017) (allowing plaintiff the opportunity to add necessary party before dismissal).

## IV. CONCLUSION

For the foregoing reasons, Defendant requests that the Court dismiss Count II of Plaintiff's First Amended Complaint under Rules 12(b)(1), 12(b)(6), and 12(b)(7). Alternatively, Defendant seeks an order requiring Plaintiff to join a necessary party, Mrs. Ethel Kennedy to Count II.

This 6th day of November, 2020.

s/Benjamin L. Williams
Benjamin L. Williams (VSB No. 88591)
KILPATRICK TOWNSEND & STOCKTON LLP
607 14th Street, N.W., Ste. 900
Washington, D.C. 20005
Tel: (202) 481-9945
Fax: (202) 618-6356
blwilliams@kilpatricktownsend.com

Joel D. Bush, II
*Pro Hac Vice Application To Be Filed*
Joe P. Reynolds
*Pro Hac Vice Application To Be Filed*
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
jbush@kilpatricktownsend.com
jreynolds@kilpatricktownsend.com

*Counsel for Defendant Alan J. Dabbiere*

- 28 -

## CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.  I further certify that a copy of the foregoing document has been served on Mrs. Ethel S. Kennedy, c/o Eleanor Zappone, Esq., Arent Fox LLP, 1050 Connecticut Avenue, N.W., Washington, D.C. 20036 in accordance with Section 15.12 of the Purchase Agreement.  I also certify that a copy of the foregoing document has been served on Mrs. Ethel S. Kennedy at her last known address by overnight delivery.

This 6th day of November, 2020.

s/Benjamin L. Williams
Benjamin L. Williams (VSB No. 88591)

*Counsel for Defendant Alan J. Dabbiere*

US2008 17771786 1