IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| KERRY KENNEDY,<br><br>    Plaintiff,<br><br>v.<br><br>ALAN J. DABBIERE,<br><br>    Defendant. | CIVIL ACTION NO.<br>1:20-CV-00882-AJT-MSN |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
<u>COUNT II OF PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

Joel. D. Bush, II
Admitted *Pro Hac Vice*
Joe P. Reynolds
Admitted *Pro Hac Vice*
KILPATRICK TOWNSEND &
STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
(P): 404-815-6500
(F): 404-815-6555
jbush@kilpatricktownsend.com
jreynolds@kilpatricktownsend.com

Benjamin L. Williams (VSB No. 88591)
KILPATRICK TOWNSEND &
STOCKTON LLP
607 14th Street, NW, Suite 900
Washington, DC 20005
(P): 202-481-9945
(F):202-618-6356
blwilliams@kilpatricktownsend.com

*Attorneys for Defendant Alan J. Dabbiere*

In her original complaint, Plaintiff asserted a single claim for specific performance of a June 16, 2010 email agreement, in which Defendant agreed that Plaintiff could remove an urn from Hickory Hill based upon certain representations Plaintiff made in 2010 about the history of the urn. ECF 1. In response to the complaint, Defendant asserted counterclaims seeking rescission of the 2010 email agreement based upon mutual mistake, fraud, and unclean hands, given that Plaintiff's 2010 representations about the history of the urn have proven to be demonstrably false. ECF 5.

In her First Amended Complaint, Plaintiff adds a claim for declaratory judgment seeking a declaration that "the Urn constitutes Ms. Kennedy's personal property, *that it did not convey to defendant Dabbiere when he purchased Hickory Hill*, that Ms. Kennedy is entitled to take immediate physical possession of the Urn, and that she can take all appropriate actions to retrieve the Urn from Hickory Hill." ECF 13, Am. Compl. ¶ 50 (emphasis added). Notwithstanding Plaintiff's explicit allegations in Count II, Plaintiff argues in her opposition brief that she is not "asking the Court to decide whether the 2009 Purchase Agreement transferred ownership of the Urn from Mrs. Ethel Kennedy to Defendant." ECF 23, Opp., p. 6.

It is thus *Plaintiff* who seeks to "rewrite[ ] Plaintiff's Amended Complaint," *id.*, p. 3, because Plaintiff argues in her brief that an "[a]djudication of rights under the 2009 Purchase Agreement is not sought," *id.*, p. 1, yet Plaintiff simultaneously requests that the Court issue a "declaration" and enter a "judgment" that the urn "did not convey to defendant Dabbiere when he purchased Hickory Hill," Am. Compl. ¶ 50, under the 2009 Purchase Agreement with Mrs. Ethel Kennedy. Because Plaintiff unambiguously "seeks a finding, declaration and the entry [of] judgment by the Court that the Urn . . . did not convey to defendant Dabbiere when he purchased Hickory Hill," *id.*, in 2009, she cannot at the same time credibly argue that "the Court need not

- 1 -

interpret or even look at the 2009 Purchase Agreement . . . ," Opp. p. 3, through which Defendant acquired the Hickory Hill property, including the urn.

Plaintiff further argues that "the 2009 Purchase Agreement has no bearing" on whether the Urn constitutes "a fixture or personal property," Opp., p. 2, which Plaintiff contends is "an entirely separate question to be decided under Virginia common law." *Id.*, p. 1. To the contrary, under Virginia law, "the intent of the parties" is the chief test in determining whether an item has been converted into a fixture. *State Highway & Transp. Com'r v. Edwards Co.*, 220 Va. 90, 94, 255 S.E.2d 500, 503 (1979). Thus, under Virginia law, in order to adjudicate Plaintiff's Count II, the Court must assess "[t]he intention of the party making the annexation[.]" *Ferguson v. Stokes*, 287 Va. 446, 453–54, 756 S.E.2d 455, 459 (2014) (first alternation in original). Therefore the Court must ascertain the intent of, among others, *Mrs. Ethel Kennedy* – not Plaintiff – through an analysis of, among other things, the 2009 real estate transaction to which Plaintiff is a nonparty. *Id*.

In short, both the "declaration" requested by Plaintiff and the application of Virginia law on fixtures require the Court to determine the parties' intent in the 2009 real estate transaction, including the 2009 Purchase Agreement to which Plaintiff is not a party. *Id.*; Am. Compl. ¶ 50. In her opposition brief, Plaintiff does not challenge or even address the overwhelming authority establishing that a nonparty to a contract does not have standing to seek a declaratory judgment regarding any rights and obligations under a contract to which it is not a party. *See generally* Opp. Nor does Plaintiff challenge or even address Defendant's other arguments in the motion to dismiss. Plaintiff wholly ignores that:

- Plaintiff improperly seeks to adopt Mrs. Ethel Kennedy's 2010 arguments under the 2009 Purchase Agreement as her own, Def's. Mot., p. 17-19;

- Plaintiff and Mrs. Ethel Kennedy's positions about the ownership of the urn are completely inconsistent, *id.*, p. 21;

- Plaintiff's declaratory judgment claim constitutes an end run around the fee-shifting provision of the Purchase Agreement, *id.*, p. 22;

- Plaintiff's request for a declaration seeks an adjudication of past conduct not guidance as to future conduct, *id.*, p. 23; and

- Plaintiff's request for a declaration is a thinly-veiled action for detinue, a claim for which the statute of limitations expired many years ago, *id.*, p. 23-24.

Plaintiff's failure to respond to virtually all of Defendant's arguments makes the task before the Court an easy one. Because Count II implicates the 2009 real estate transaction between Defendant and Mrs. Ethel Kennedy, Defendant's motion to dismiss Count II should be granted.

## I. Count II seeks to adjudicate rights and obligations arising out of the 2009 real estate transaction.

Plaintiff argues that she seeks resolution of a "simple legal question" – "that the Urn in dispute is personal property and not a fixture." Opp., p. 1. She argues that she is not "asking the Court to decide whether the 2009 Purchase Agreement transferred ownership of the Urn from Mrs. Ethel Kennedy to Defendant." *Id.*, p. 6. Yet, Paragraph 50 of Plaintiff's First Amended Complaint makes this very request: "Ms. Kennedy seeks a finding, declaration and the entry [of] judgment by the Court that the Urn . . . did not convey to defendant Dabbiere when he purchased Hickory Hill," Am. Compl. ¶ 50, from Mrs. Ethel Kennedy in 2009. Other allegations in the First Amended Complaint similarly allege the urn did not convey to Defendant in the 2009 real estate transaction. *See, e.g.*, *id.* ¶ 7 ("Ms. Kennedy's mother, Mrs. Ethel Kennedy, entered into a contract with Defendant to convey her home, the real property known as Hickory Hill [in 2009]."); *id.* ¶ 11 (Plaintiff asserted that the Urn "was her property and *did not convey with the conveyance of Hickory Hill to defendant Dabbiere*") (emphasis added); *id.* ¶ 12 (Defendant "claimed that the Urn was a fixture which had conveyed with the Hickory Hill real property"); ¶ 13 ("In fact and law,

however, the Urn was not a fixture and *did not convey [in 2009] with the real property*.") (emphasis added).

Plaintiff completely ignores these allegations in her opposition brief, going so far as omitting them from the quoted excerpts of the amended complaint: "Count II of the Amended Complaint highlights the straightforward nature of this dispute – 'Defendant Dabbiere contends that the Urn is a fixture . . . .' ¶ 46. 'Ms. Kennedy contends, and has at all times asserted, that the Urn constitutes personal property, not a fixture . . . .' ¶ 47." Opp., p. 2 (alteration in original). Yet Plaintiff's First Amended Complaint actually alleges:

> 46. Defendant Dabbiere contends that the Urn is a fixture. He further contends that because the Urn is a fixture, <u>it conveyed to him along with the other real property in May 2010 when Mrs. Ethel Kennedy sold Hickory Hill to him</u>. Defendant Dabbiere also asserts that the Contract is unenforceable and must be rescinded.
>
> 47. Ms. Kennedy contends, and has at all times asserted, that the Urn constitutes personal property, not a fixture, <u>that did not convey with the sale of Hickory Hill to defendant Dabbiere</u>.

Am. Compl. ¶¶ 46-47 (emphasis added).

Rather than ask for an answer to the "simple question" of whether the urn is personal property or a fixture,[1] Plaintiff concedes that Count II seeks a declaration about who is the rightful owner of the urn <u>as of June 15, 2010</u>, *before* the June 16, 2010 email agreement. Opp., p. 8-9. In particular, Plaintiff argues that, if the Court decides Count I in Defendant's favor, "then the parties would be back in the same position they were in on June 15, 2010 – the day before the settlement

---

[1] Such an abstract, hypothetical question would fail to present a "sufficiently live controversy" under Article III. *See Miller v. Augusta Mut. Ins. Co.*, 157 F. App'x 632, 637 (4th Cir. 2005) (a declaratory judgment action must "present a justiciable controversy rather than abstract, hypothetical or contingent questions"). Plaintiff cannot ask the Court to consider whether certain personalty on Defendant's property amounts to a "fixture" under Virginia law, no more than a stranger can ask the same question about any other part of Defendant's (or anyone else's) property.

- 4 -

agreement Contract – with Plaintiff claiming that the Urn is personal property that belongs to her and Defendant claiming that it is a fixture that conveyed to him when he bought Hickory Hill." *Id*. According to Plaintiff, "the addition of Count II provides the opportunity for the parties to have this Court decide their dispute in a single proceeding, adjudicating as between the two parties who owns the Urn." *Id.*, p. 9.

In his opening brief, Defendant laid out in detail the allegations in the pleadings about the rightful owner of the urn as of June 15, 2010. ECF 20, Def's Mot. at 7-8. Plaintiff does not dispute any of this discussion and concedes that the June 14, 2010 letter from counsel for Mrs. Ethel Kennedy sets forth the dispute that existed on that date between Defendant and Mrs. Ethel Kennedy. Opp., p. 7 n.2 In fact, Plaintiff argues "it was *exactly* the dispute set forth in this letter that resulted – *two days later* – in the June 16, 2010 settlement agreement contract that Plaintiff is seeking to enforce in Count I of her Amended Complaint." *Id* (emphasis in original).[2] As a result, Plaintiff and Defendant both agree that the June 14, 2010 letter from counsel for Mrs. Ethel Kennedy serves as the best evidence of the nature of the dispute about ownership of the urn. And that 2010 ownership dispute was between Defendant and Mrs. Ethel Kennedy – not between Defendant and Plaintiff.

---

[2] Defendant disagrees with Plaintiff's characterization of the June 16, 2010 email as a "settlement agreement," Opp. p. 7 n.2, that purportedly resolved the issues raised by the June 14, 2010 letter on behalf of Mrs. Ethel Kennedy. As a practical matter, any resolution about the issues in the June 14, 2010 letter would necessarily require ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. *See* ECF 21 at Ex. 1 (2009 Purchase Agreement at § 15.1, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉). The June 16, 2010 email agreement, confirms only Defendant's willingness to "give up any rights" to the urn based specifically upon Plaintiff's impassioned plea on that same date about the urn's purported connection to Jacqueline Kennedy, which representations by Plaintiff turned out to be false. Def's Mot., pp. 7-9.

Also in his opening brief, Defendant addressed the June 14, 2010 letter in detail, including its discussion of three issues about the urn: (i) whether the urn conveyed as a fixture, (ii) whether the urn conveyed because it was not included in the list of excluded personal property attached to the purchase agreement, and (iii) whether the urn conveyed based on statements made in sales brochures and by Mrs. Ethel Kennedy's broker. *See* Def's. Mot., p. 17-19. Plaintiff does not challenge any of this discussion in her opposition brief. *See generally* Opp. Plaintiff also admits the letter was written on behalf of counsel for Mrs. Ethel Kennedy, not Plaintiff. Opp., p. 7 n.2 (contending the June 14, 2010 letter was "from Mrs. Ethel Kennedy's attorney to Mr. Dabbiere's attorney"). Therefore, in addition to the allegations in the First Amended Complaint, Plaintiff's adoption of the positions set forth in the June 14, 2010 letter establishes that Plaintiff, through Count II, seeks to adjudicate rights and obligations arising out of the 2009 real estate transaction and to resolve a dispute that existed in June 2010 between Defendant and Mrs. Ethel Kennedy – not between Defendant and Plaintiff.

Because Plaintiff was not a party to the 2009 real estate transaction, Plaintiff lacks standing to obtain a declaratory judgment about the rights and obligations arising out of that transaction. Plaintiff does not dispute that a nonparty to a contract lacks standing, nor does Plaintiff otherwise address any of the authority cited by Defendant for the proposition that Plaintiff lacks standing to assert Count II. *See generally* Opp. Instead, Plaintiff cites a handful of inapposite cases, none of which involve a plaintiff seeking to adjudicate rights and obligations arising out of a transaction to which they were not a party. *See Barry v. Donnelly*, 781 F.2d 1040 (4th Cir. 1986) (dispute between recipient of painting from painter and estate of painter who alleged recipient was mere bailee); *Willcox v. Stroup*, 467 F.3d 409 (4th Cir. 2006) (dispute between family members of confederate general who came into possession of historical papers and the State of South Carolina,

which failed to show the papers were public property); *In re Alterman*, 127 B.R. 356 (Bankr. E.D. Va. 1991) (dispute between purchaser at asset sale of animal cages and landlord of property where cages had been installed); *NationsBank of N.C., N.A. v. Capital Assocs. Int'l, Inc.*, 916 F. Supp. 549 (W.D.N.C. 1996) (dispute between banking institution and asset-based financing company over ownership of property located on leased premises).

**II.   The Court cannot declare the rightful owner of the urn as of June 15, 2010 without reference to the terms of the 2009 real estate transaction.**

Plaintiff argues in conclusory fashion that "[t]he status of the Urn as [purported] personal property is wholly independent of the 2009 Purchase Agreement entered into between Mrs. Ethel Kennedy and Defendant." Opp., p. 6. In particular, Plaintiff argues that resolution of Count II depends upon "the common law of Virginia with regard to fixtures versus personal property" and that "the 2009 Purchase Agreement has no bearing on this question." *Id.*, p. 2. Plaintiff similarly contends that "Defendant's arguments about the 2009 Purchase Agreement" invoke "the Virginia law of contracts," whereas "Plaintiff's claim that the Urn constitutes personal property is a question independent of the 2009 Purchase Agreement and invokes a different body of law – the Virginia common law of personal property versus fixtures." *Id.*, p. 3.

Plaintiff's argument mischaracterizes the relief sought by Count II. Count II explicitly "seeks a finding, declaration and the entry [of] judgment by the Court that the Urn . . . did not convey to defendant Dabbiere when he purchased Hickory Hill[.]" Am. Compl. ¶ 50. In addition to the allegations in Plaintiff's First Amended Complaint, the Court must look to the June 14, 2010 letter as the best evidence of the nature of the dispute in Count II, especially since Plaintiff concedes "it was *exactly* the dispute set forth in this letter" that purportedly resulted in the June 16, 2010 email agreement that she seeks to litigate in Count II. Opp., p. 7 n.2 and p. 9. However,

the June 14, 2010 letter establishes that the focus of the dispute between Defendant and Mrs. Ethel Kennedy *was not*, as an academic matter, whether the urn was personal property or a fixture. ECF 5-10 at 3. The dispute was over who owned the urn: Defendant claimed the urn conveyed to him six months earlier, in the 2009 real estate transaction, while Mrs. Ethel Kennedy disputed Defendant's ownership and her counsel represented that she "*desires*" – present tense, not past – to gift the urn to Plaintiff in June 2010. *Id.*

Plaintiff now asks the Court to resolve "this exact dispute" that existed between Defendant and Mrs. Ethel Kennedy in June 2010, Opp., p. 7 n.2 and p. 9, and to declare that the Urn "did not convey to defendant Dabbiere when he purchased Hickory Hill," from Mrs. Ethel Kennedy in 2009. Am. Compl. ¶ 50. By Plaintiff's own admission, her request for a "declaration" that the urn "did not convey to Defendant" in 2009 is thus not "independent" from the 2009 real estate transaction, Opp., p. 3, and instead is fully based upon the 2009 real estate transaction to which Plaintiff is a nonparty. Opp., p. 7 n.2 and p. 9.

In addition to mischaracterizing the relief sought in Count II, Plaintiff fails to cite any authority suggesting the Court can resolve Count II without reference to the terms of the 2009 real estate transaction. *See generally* Opp. Plaintiff does not challenge that the 2009 Purchase Agreement sets forth the terms by which Defendant purchased the Hickory Hill property from Mrs. Ethel Kennedy. *See* Def's. Mot., p. 12 & n.1, 17. Under Virginia law, as elsewhere, courts first look to whether a specific agreement between the parties governs the character of the property in dispute. *See Dowdy v. Silverstein*, 1981 WL 180584, at *2-3 (Va. Cir. Ct. Aug. 4, 1981) ("Whatever may be the rule of the common law respecting fixtures, in the absence of any agreement of the parties, it is well settled that the contract of the parties will fix the character and control the disposition of personal property . . . ."). Even the single case involving fixtures cited

- 8 -

US2008 17844247 1

by Plaintiff acknowledges this proposition. *See Danville Holding Corp. v. Clement*, 178 Va. 223, 231-33, 16 S.E.2d 345, 348-49 (1941) ("In the absence of any specific agreement between the parties as to the character of a chattel placed upon the freehold, the three general tests are as follows . . . ."). Simply put, in order to address whether the urn constitutes a fixture or personal property under Virginia law, the Court must look to the "specific agreement" that involved the urn – the 2009 Purchase Agreement through which Defendant acquired Hickory Hill, including the urn.

For example, Mrs. Ethel Kennedy and Defendant agreed "" ECF 21, Declaration of Alan J. Dabbiere ¶ 2, Ex. 1. ▌

▌. *Id.* Whether and to what extent Defendant and Mrs. Ethel Kennedy "fix[ed] the character of the property by agreement, express or implied," including by omitting the urn from Exhibit F, requires an examination of the 2009 Purchase Agreement. *Dowdy*, 1981 WL 180584, at *2-3.

In arguing that "whether the Urn is personal property or a fixture" is "an entirely separate question" from the 2009 real estate transaction, Opp., p. 1, Plaintiff ignores that, under Virginia law, "the intent of the parties" is the chief test in determining whether the chattel has been converted into real property. *State Highway & Transp. Com'r*, 220 Va. at 94, 255 S.E.2d at 503; *see also Ferguson*, 287 Va. at 453–54, 756 S.E.2d at 459 ("This Court has recognized that '[t]he intention of the party making the annexation is the paramount and controlling consideration.'"). Therefore, under Virginia law, in order to adjudicate Plaintiff's Count II, the Court must assess

"the intention of the party making the annexation," *id*., and thus the Court must ascertain the intent of, among others, *Mrs. Ethel Kennedy* – not Plaintiff – through an analysis of, among other things, the 2009 real estate transaction. Put another way, the application of Virginia common law to the fixture versus personal property issue leads the Court directly back to the 2009 real estate transaction to which Plaintiff is a nonparty. Therefore, even under the common law of fixtures, a declaration by the Court as to who was the rightful owner of the urn as of June 15, 2010 requires that the Court resolve the June 2010 ownership dispute between Defendant and Mrs. Ethel Kennedy under the terms of the 2009 Purchase Agreement. As a nonparty to the 2009 Purchase Agreement, Plaintiff has no standing to litigate this issue.

**III.     Defendant Has No Basis to Assert Claims Against Plaintiff Under the 2009 Purchase Agreement.**

Plaintiff argues that "Defendant has not asserted an actual claim that the Urn conveyed to him in the [2009] real estate transaction" and that "Defendant's Counter-Claims do not actually assert a claim under the 2009 Purchase Agreement." Opp., p. 6 n.1, 9 n.3, 10. Plaintiff's assertions prove Defendant's point: Defendant has no legal basis to sue *Plaintiff* on a 2009 agreement to which Plaintiff is a non-party. Any claims by Defendant under the 2009 Purchase Agreement must be asserted against Mrs. Ethel Kennedy – the only other party to that agreement – for the same reasons that Plaintiff lacks standing to seek a declaration in Count II that the urn "did not convey … when [Defendant] purchased Hickory Hill" in 2009, because Plaintiff is a non-party to that 2009 real estate transaction.

**IV.     Plaintiff fails to address the central role of Mrs. Ethel Kennedy in Count II.**

Plaintiff's entire response to Defendant's motion to dismiss under Rule 12(b)(7) can be found in footnote 4, wherein Plaintiff argues that (i) Mrs. Ethel Kennedy's "presence is not needed

- 10 -

US2008 17844247 1

in this case to adjudicate whether the urn is personal property or a fixture"; (ii) "to the extent that Defendant contends that the 2009 Purchase Agreement is relevant to the parties' dispute, it can be admitted into evidence without authentication by Mrs. Kennedy"; and (iii) the 2009 Purchase Agreement "has an integration clause that would render any evidence regarding the *pre-*2009 Purchase Agreement communications to which Mrs. Kennedy was a party irrelevant." Opp., p. 10 n.4 (emphasis in original).

As to the first argument, Count II seeks more than an adjudication as to whether the urn is personal property or a fixture. *See e.g.*, Am. Compl. ¶ 50 ("Ms. Kennedy seeks a finding, declaration and the entry judgment by the Court that the Urn . . . did not convey to defendant Dabbiere when he purchased Hickory Hill[.]"). Plaintiff admits that (i) the purpose of Count II is to resolve the rightful owner of the urn as of June 15, 2010, Opp. p. 8-9; (ii) the June 14, 2010 letter sets forth "exactly the dispute" over the ownership of the urn Plaintiff seeks to adjudicate in Count II, *id.,* p. 7 n.2 and p.9; and (iii) the June 14, 2010 letter was written on behalf of Mrs. Ethel Kennedy, not Plaintiff. *Id.*, p. 7 n.2. In the face of these admissions, Plaintiff cannot reasonably dispute that Mrs. Ethel Kennedy's presence is "not needed" in this case.

As to the second argument, Plaintiff argues that, even if the 2009 Purchase Agreement is relevant to Count II, it "can be admitted into evidence without authentication by Mrs. Kennedy." Opp., p. 10 n.4. Whether and how the 2009 Purchase Agreement may be dealt with as an evidentiary matter has no bearing on whether, as a matter of law, a nonparty to a contract may seek to assert rights and obligations under the contract without the presence of the contracting parties. For example, Plaintiff does not challenge Defendant's opening argument that "[i]n applying Rule 19, the Fourth Circuit has found that 'all parties to a contract, and others having a substantial

interest in it, are necessary parties.'" *ADI Constr. Of Va, LLC v. Bordewick*, No. 1:13-CV-598-JCC-IDD, 2013 WL 3730084, at *3 (E.D. Va. July 12, 2013) (citation omitted).

As to the third argument, Plaintiff argues that the integration clause in the 2009 Purchase Agreement between Defendant and Mrs. Ethel Kennedy "render[s] any evidence regarding the *pre*-2009 Purchase Agreement communications to which Mrs. Kennedy was a party irrelevant." Opp., p. 10 n.4. Counsel for Mrs. Ethel Kennedy made this same assertion in the June 14, 2010 letter, in response to Defendant's argument that the urn conveyed to him in the real estate transaction as a consequence of representations in multiple sales brochures and unambiguous statements by Mrs. Ethel Kennedy's broker. ECF 5-10 at 3. However, the integration clause cannot bar all communications that pre-date the 2009 Purchase Agreement for a number of reasons, including that parol evidence may be introduced to resolve an ambiguity or to explain what a term means. *See Prospect Dev. Co. v. Bershader*, 258 Va. 75, 84, 515 S.E.2d 291, 296 (1999) (representations by seller's agent about the terms of the real estate contract, including statements made in brochures, were admissible to explain what the sales price included, despite the presence of an integration clause). Either way, *Plaintiff* is not the proper party to make arguments about the scope and effect of the integration clause in an agreement between Defendant and Mrs. Ethel Kennedy, and Plaintiff's invocation of it here further evidences that Count II cannot be adjudicated without reference to the 2009 Purchase Agreement and to Mrs. Ethel Kennedy.

In addition to the Rule 12(b)(7) motion, Plaintiff fails to address Defendant's arguments that adjudicating Count II creates the risk of inconsistent obligations and due process violations. *See* Def's. Mot., p. 20-22. In particular, Defendant argued that the June 14, 2010 letter reveals an inherent conflict between Plaintiff and Mrs. Ethel Kennedy. *Id.*, p. 20. Counsel for Mrs. Ethel Kennedy wrote the letter roughly six months after the closing of the real estate transaction. The

letter states that "Mrs. Kennedy *desires to give* the urn to her daughter as a gift." ECF 5-10 at 3 (emphasis added). The letter did not state, as Plaintiff now alleges in the First Amended Complaint that, at some unspecified time "[p]rior to the conveyance of the Hickory Hill real estate to defendant Dabbiere," Mrs. Ethel Kennedy "gave all ownership rights and title to the urn." ECF 13, Am. Compl. ¶ 8.

In her opposition brief, Plaintiff does not dispute that Plaintiff and Mrs. Ethel Kennedy's positions are entirely inconsistent and that adjudicating Count II would require the Court to resolve this contradiction. *See generally* Opp. Plaintiff also does not dispute that Plaintiff could conceivably assert a claim against Mrs. Ethel Kennedy for conveying the urn to Defendant in the 2009 real estate transaction, in the event the Court resolves the conflict between Plaintiff and Mrs. Ethel Kennedy and finds that she received the urn as a gift before December 2009. *Id.* Instead, Plaintiff again relegates the entire response to Defendant's arguments to a footnote. Opp., p. 9 n.3.

In her footnote, Plaintiff argues that the "way to prevent inconsistent rulings when multiple claimants assert rights to the same property is to have those claims all adjudicated in the same proceeding" and "[t]his is exactly what Plaintiff is doing with Count II." Opp., p. 9 n.3. This position ignores that Plaintiff did not include Mrs. Ethel Kennedy in this suit, even though Mrs. Ethel Kennedy – not Plaintiff – was the party to the dispute over ownership of the urn in June, 2010. Plaintiff also argues "the specter of inconsistent rulings is unlikely here, where Defendant has not asserted an actual claim that the Urn conveyed to him in the real estate transaction." *Id.* As discussed above, this argument establishes there is no actual case or controversy between Defendant and Plaintiff about the 2009 Purchase Agreement, because Defendant has no legal basis for asserting breach of contract claims against a non-party to the 2009 Purchase Agreement. In

sum, Plaintiff fails to address the very concrete and specific conflict between Plaintiff and Mrs. Ethel Kennedy identified by Defendant in his opening brief.

Instead of addressing the conflict between Plaintiff and Mrs. Ethel Kennedy, Plaintiff argues elsewhere in her opposition brief that "Mrs. Ethel Kennedy has no interest in the Urn and makes no claim to its ownership." Opp., p. 7 n.2. In other words, faced with an argument that a necessary party to the dispute is missing, and that Plaintiff has an inherent conflict with the necessary party, Plaintiff responds by arguing that the necessary party does not have any interest in the dispute. *Id*. Plaintiff does not cite any evidence supporting this representation, and it is unclear whether Plaintiff has authority to make such a representation on behalf of Mrs. Ethel Kennedy. *Id*. In any event, the fact that Mrs. Ethel Kennedy "has no interest in the Urn and makes no claim to its ownership" further establishes there is no "substantial controversy" of "sufficient immediacy," *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), regarding the dispute set forth in the June 14, 2010 letter, which Plaintiff concedes is "exactly the dispute" at issue in Count II. Opp., p. 7 n.2 and p. 9.

## V. Conclusion

For the foregoing reasons, and the reasons set forth in Defendant's opening brief, Defendant requests that the Court dismiss Count II of Plaintiff's First Amended Complaint under Rules 12(b)(1), 12(b)(6), and 12(b)(7).

This 27th day of November, 2020.

    s/Benjamin L. Williams
    Benjamin L. Williams (VSB No. 88591)
    KILPATRICK TOWNSEND & STOCKTON LLP
    607 14th Street, N.W., Ste. 900
    Washington, D.C. 20005
    Tel: (202) 481-9945
    Fax: (202) 618-6356
    blwilliams@kilpatricktownsend.com

Joel D. Bush, II
*Admitted Pro Hac Vice*
Joe P. Reynolds
*Admitted Pro Hac Vice*
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
jbush@kilpatricktownsend.com
jreynolds@kilpatricktownsend.com

*Counsel for Defendant Alan J. Dabbiere*

**CERTIFICATE OF SERVICE**

This is to certify that I have this day electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.

This 27th day of November, 2020.

                                       s/Benjamin L. Williams
                                       Benjamin L. Williams (VSB No. 88591)

                                       *Counsel for Defendant Alan J. Dabbiere*