## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| KERRY KENNEDY,<br><br>     Plaintiff,<br><br>v.<br><br>ALAN J. DABBIERE,<br><br>     Defendant. | CIVIL ACTION NO.<br>1:20-CV-00882-AJT-MSN |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Joel. D. Bush, II
Admitted *Pro Hac Vice*
Joe P. Reynolds
Admitted *Pro Hac Vice*
KILPATRICK TOWNSEND &
STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
(P): 404-815-6500
(F): 404-815-6555
jbush@kilpatricktownsend.com
jreynolds@kilpatricktownsend.com

Benjamin L. Williams (VSB No. 88591)
COZEN O'CONNOR
1200 19th Street NW
Washington, D.C. 20036
Tel: (202) 912-4859
Fax: (202) 861-1905
BLWilliams@cozen.com

*Attorneys for Defendant Alan J. Dabbiere*

# I.    INTRODUCTION

The nearly 6-foot tall, 5-foot wide "Edwardian urn on the front lawn" of the property commonly known as Hickory Hill in McLean, Virginia has "remain[ed] with the real estate" for over 80 years, through multiple sale transactions and at least five previous owners.  But, in Count II of her First Amended Complaint, Plaintiff seeks a declaratory judgment that (1) "the Urn constitutes [Plaintiff's] personal property" because her mother, and prior owner of the Hickory Hill property, Mrs. Ethel Kennedy, allegedly gifted the lawn urn to Plaintiff and (2) the lawn urn purportedly "did not convey to Defendant Dabbiere" when he purchased the Hickory Hill property in 2009.  ECF 13 at ¶ 50.  Because the facts material to Count II are undisputed, Defendant moves the Court to enter summary judgment in his favor.  Count I of Plaintiff's First Amended Complaint seeks specific performance of a June 16, 2010 email agreement between Plaintiff and Defendant (the "June 2010 Agreement") wherein Defendant, based on Plaintiff's representations about the origin of the urn, agreed to surrender the urn to Plaintiff at the end of a ten-year period.  *Id.* ¶¶ 36-44.  But the June 2010 Agreement fails for lack of consideration.  Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's Count I.

First, the lawn urn has been a fixture or improvement to the Hickory Hill property since at least 1941, when Supreme Court Justice Robert J. Jackson entered into an agreement for the purchase of the Hickory Hill property and executed a memorandum of understanding that "constitute[d] a part of the purchase agreement" wherein the parties to the sale agreed that certain personal property, including the urn "will remain with the real estate and become the *property* of the purchaser."  Consistent with this language coupling the lawn urn and the real estate, the urn conveyed with the Hickory Hill property in each of four subsequent real estate transactions before Defendant's purchase of the property in 2009.  As a matter of law, the lawn urn conveyed to

US2008 18218816 1

Defendant as a fixture or an improvement to the Hickory Hill property, just as it had conveyed in each of the five prior real estate transactions.

Further, for more than 150 years, the common law of fixtures has recognized that "[a] thing may be as firmly affixed to the land by gravitation as by clamps or cement." It is undisputed that the lawn urn is secured by gravity, cannot easily be moved by a single person, and that neither wind, storms, nor other inclement weather have ever caused any movement of the urn.

Second, Plaintiff failed to come forward with any evidence of the alleged "gift" of the lawn urn from Mrs. Ethel Kennedy. During her deposition, Plaintiff could not recall any details about the purported gift, including when it occurred, how it occurred, or even whether she spoke with her mother, Mrs. Ethel Kennedy, about any alleged gifting of the urn. Importantly, neither Plaintiff nor Mrs. Ethel Kennedy, represented by Plaintiff's counsel, produced a writing evidencing the alleged gift and Plaintiff in fact never came into possession the urn, both of which are required for a valid gift under Virginia law.

Finally, Plaintiff alleges that her "ownership rights in and entitlement to physical possession of the Urn" constitute "consideration" for the June 2010 Agreement with Defendant. Am. Compl. ¶ 15. However, Plaintiff cannot (1) establish a valid legal claim to the urn about which she could agree to forebear as consideration for the June 2010 Agreement or (2) show evidence of an agreement by Plaintiff that she will forebear in her exercise of a valid legal right, both of which are required under Virginia law. Accordingly, the June 2010 Agreement is unenforceable for lack of consideration.

## II.    FACTUAL BACKGROUND

### A.    The Hickory Hill Property and the Lawn Urn.

The Hickory Hill property plays a unique role in American history, having served as the home of Supreme Court Justice Robert J. Jackson, Senator and Mrs. John F. Kennedy, Senator and

Mrs. Robert F. Kennedy, and according to Civil War lore, a place where General George B. McClellan stationed his troops. ECF 47-3, Pl's Resp. to Def's Stip. Fact No. 1. Given the very public lives of those who lived on the property, Hickory Hill "is a bit of an icon of McLean," Virginia. Defendant's Appendix of Evidence in Support of Motion for Summary Judgment ("App'x Ex.") Ex. 2, Deposition of Carole Herrick 35:14-15; *id*., Ex. 15, DX-49 (depicting Hickory Hill, including a large urn situated on the lawn near the front of the house); Declaration of Amy Mansfield ("Mansfield Decl.") at ¶ 20.

Land records and related sale documents confirm that a large lawn urn in front of the house conveyed with the Hickory Hill property in the 1941 purchase of the property by soon-to-be Associate Supreme Court Justice Robert Jackson. Specifically, on or about August 1, 1941, the Honorable Robert J. Jackson, signed a memorandum with Mr. and Mrs. Leo and Leonora Rocca, then the owners of the Hickory Hill property (the "1941 memorandum") that provides that:

> This memorandum of understandings reached between Mr. Rocca and myself constitutes a part of the purchase agreement for the property at Langley, Virginia, known as Hickory Hill.
>
> The following ***personal property will remain with the real estate and become the property of the purchaser***:
>
> Lawn mower, trailer, tractor, and ***lawn urn***, and the following items in the house: Hall, stair, and master bedroom carpets; attic table and benches; gas stove and refrigerator in the kitchen; and the piano.
>
> While we anticipate no such event, it is understood that I have no use for the property except in event that my pending nomination is confirmed. In event of failure of confirmation, the purchase will not be effective.

ECF 42-2 at 6-7 ¶ 30 (emphasis added); App'x Ex. 3, February 10, 2021 Deposition of Kerry Kennedy ("Kennedy Dep.") 60:20-23; App'x Ex. 4, PX-3. The parties agree that the "lawn urn" identified in the 1941 memorandum is the urn at issue in this lawsuit. App'x Ex. 3, Kennedy Dep. 68:8-11; *id.* at Ex. 1, February 2, 2021 Deposition of Alan Dabbiere ("Dabbiere Dep.") 59:8-20.

After the 1941 transaction, when the Hickory Hill property conveyed from Leo and Leonora Rocca to the Honorable Robert and Mrs. Irene Jackson by deed dated July 9, 1941, App'x Ex. 5, PX-4, the Hickory Hill property – including the lawn urn – subsequently conveyed in five additional real estate transactions:

(1) The Honorable Robert and Mrs. Irene Jackson conveyed the property to the Honorable Robert Jackson individually by deed dated January 10, 1944, Declaration of Alan J. Dabbiere ("Dabbiere Decl."), ¶ 2, Ex B at AJD0000117;

(2) The executors and heirs of the estate of the Honorable Robert Jackson conveyed the property to John F. Kennedy by deed dated October 15, 1955, App'x Ex. 6, PX-6;

(3) John F. Kennedy and Jacqueline B. Kennedy conveyed the property to Joseph Kennedy by deed dated January 2, 1957, App'x Ex. 7, PX-7;

(4) Joseph P. Kennedy and Rose F. Kennedy conveyed the property to Mrs. Ethel Kennedy individually by deed dated January 8, 1965, App'x Ex. 8, PX-8; and

(5) Mrs. Ethel Kennedy conveyed the property to Mr. Alan Dabbiere by deed dated December 23, 2009, Dabbiere Decl. ¶ 3, Ex. C, AJD0000051-56.

See also ECF 42-2, Pl's Prop. Stip. Facts at 2, Nos. 6a-e; ECF 49, Def's Obj. to Pl's Prop. Stip. Facts at 3 (agreeing that Fact Nos. 6a-e are supported by the record).

Plaintiff's "memory is that [the] urn is about 7 or 8 feet tall . . . [and] 5 or 6 feet wide." App'x Ex. 3, Kennedy Dep. 34:15-24. During the time that Plaintiff resided at Hickory Hill, the urn was situated in the same location on the front lawn of the property, see id. 256:16-21, and Plaintiff never observed anyone attempting to move the urn. Id. 37:16-19. Plaintiff testified that, during the years in which she resided at Hickory Hill, the lawn urn was held in place by gravity, and Plaintiff does not recall any instance of the lawn urn being moved by wind, storms, or other inclement weather. Id. 36:34-35:15. The lawn urn is obviously very heavy, and Plaintiff is "confident that [she] could not pick up th[e] urn alone and move it." Id. 36:24-38:18. Indeed, any attempt to move the urn required special arrangements. See, e.g., id. 250:7-15 and App'x Ex. 11,

DX-42, Kennedy Ex. 30 (describing $8,000 in costs associated with pick-up and transport of the urn); App'x Ex. 1, Dabbiere Dep. 129:9-11 (describing the move of the urn by "either the architects or the builder"); *see also id.* 257:18-258:3 and App'x Ex. 9, PX-61 (email from Mr. Grimsley, a Certified Moving Consultant for Bayshore Allied Van Lines, seeking to schedule "an onsite visit" in connection with planning the potential move of the urn).

## B.    Marketing Hickory Hill for Sale.

In or around the fall of 2003, Mrs. Ethel Kennedy placed the Hickory Hill property on the market.  Mansfield Decl. ¶ 5; App'x Ex. 16, DX-67.  In the October 19, 2003 issue of The New York Times Magazine, a color photograph of the property, including the urn, appeared along with a short description of the property and identifying Diane Fentress at Washington Fine Properties as the listing agent.  *Id*. at 67-003 (p. 87, Sotheby's International Realty Worldwide Offerings advertisement).   In addition to public advertising, Washington Fine Properties distributed sales brochures to prospective buyers.  App'x Ex. 1, Dabbiere Dep. 76:4-77:16; Dabbiere Decl. ¶ 1, Ex. A.  Defendant received pre-sale at least one of six versions of a sales brochures, each of which included photographs of the property featuring the urn and a description of the residence as including "a tall Edwardian urn on the front lawn" at Hickory Hill.  *Id*. Specifically, Defendant received a brochure when he visited the property in 2005 that, in describing the "Residence," identified "a tall Edwardian urn on the front lawn."  App'x Ex. 1, Dabbiere Dep. 76:4-77:16; Dabbiere Decl. ¶ 1, Ex. A.  There is no dispute that the six versions of the sales brochures each contain the same sentence about "a tall Edwardian urn on the front lawn" of the Hickory Hill property.  App'x Ex. 1, Dabbiere Dep. 84:23-85:3 (Q. "What we have seen as we looked through these [brochures] is that the same 'a tall Edwardian urn' sentence existed unchanged in all six versions from 2003 to 2008; correct?" A. "Correct.").

## C. Defendant's Purchase of Hickory Hill in 2009.

On or about December 17, 2009, Defendant and Mrs. Ethel Kennedy entered into a Purchase Agreement for the sale of the Hickory Hill property for $8.25 million.[1] App'x Ex. 10, DX-26. Under the terms of the Purchase Agreement, "Purchaser agree[d] to acquire the Property, and Seller agree[d] to sell the Property, pursuant to the terms and conditions set forth herein." *Id.* at § 1. Paragraph B of the Recitals to the Purchase Agreement states:

> Purchaser desires to acquire such real property, and Seller desires to sell such real property, together with all right, title and interest of seller, if any, to the extent same may be appurtenant to such real property, with respect to any land lying in the bed of any existing, dedicated street, road or alley, all strips and gores adjoining thereto and all appurtenances, rights, privileges, licenses, easements, rights-of-way, covenants, development rights, tenements, or hereditaments incident thereto (collectively, the "Land"), and also including the improvements situated thereon, and all right, title and interest of Seller, in and to those fixtures situated thereon and used in connection with such improvements (excluding however, the excluded personal property described on <u>Exhibit F</u> attached hereto), (such improvements and fixtures, exclusive of the excluded personal property, collectively, the "Improvements"). The Land and Improvements are hereinafter referred to as the "Property").

*Id.* at 1. The real estate transaction closed on or about December 23, 2009. ECF 47-3, Pl's Resp. to Def's Stip. Fact No. 26. In or around late 2009, Ted Gossett and Florence Meers of Washington Fine Properties circulated by mail an announcement about the sale of the Hickory Hill property, which includes a photograph of the front of the Hickory Hill property prominently featuring the urn, and stating that the property has been "Listed & Sold." *Id.* at Fact No. 27. Defendant graciously permitted Mrs. Kennedy to continue to reside at Hickory Hill through May 2010, charging only a nominal fee.

Shortly after Mrs. Ethel Kennedy vacated the Hickory Hill property, on or about June 4, 2010, Defendant learned for the first time that Plaintiff apparently intended to take possession of

---

[1] Plaintiff is not a party to the 2009 Purchase Agreement. App'x Ex. 3, Kennedy Dep. 197:6-7 (Q. "Are you a party to this agreement?" A. "No.").

US2008 18218816 1

the urn.  App'x Ex. 1, Dabbiere Dep. 169:21-24 ("this was first time we'd heard about the urn . . .

that the urn suddenly was in question"); *id.,* Ex. 12, DX-43 ("Last I heard, a fellow that works with

[Kerry Kennedy] was coming to pick . . . up [the urn] this week.").  Again,  there is no dispute that

multiple sales brochures used to market the Hickory Hill property each described "[a] tall

Edwardian urn on the front lawn."  ECF 42-2, Pl's Stip. Fact No. 34; *see also* App'x Ex. 1,

Dabbiere Dep. 84:23-85:3. Further, there is no evidence that Mrs. Ethel Kennedy took steps pre-

closing to memorialize, in writing, any desire to retain the urn as her personal property.  ECF 47-

3, Pl's Resp. to Def's Stip. Fact Nos. 23-25 (conceding that the Purchase Agreement, including

Exhibit F "Excluded Personal Property," does not mention the urn).

## D.     The Alleged Gift of the Lawn Urn.

In her First Amended Complaint, Plaintiff alleges that, "prior to" the 2009 real estate

transaction with Defendant, Mrs. Ethel Kennedy "gave all ownership rights and title to the Urn

that was located at Hickory Hill to her daughter, plaintiff Kerry Kennedy."  ECF 13 at ¶ 8.  Yet

Plaintiff testified that Mrs. Ethel Kennedy actually gifted the lawn urn to Plaintiff sometime

"before" June 2010, but Plaintiff could not provide a specific date or any other details: "She gave

me the urn sometime in that period when she was selling the house and when, you know, in that

period.  I can't tell you the exact date, but she said that, yes, I'll leave it at that."  App'x Ex. 3,

Kennedy Dep. 210:21-25.  During discovery, Arent Fox (counsel for both Mrs. Ethel Kennedy and

for Plaintiff) represented that Mrs. Ethel Kennedy gave the lawn urn to Plaintiff "in the spring of

2010."  Mansfield Decl., ¶ 32; App'x Ex. 27, January 21, 2021 Letter.  Indeed, on or about June

14, 2010, Arent Fox (counsel for Mrs. Ethel Kennedy and Plaintiff) sent a letter to counsel for

Defendant stating that "Mrs. Kennedy *desires to give* the urn to her daughter as a gift."  App'x Ex.

13, DX- 45 at 2 (emphasis added); *id.* Ex. 3, Kennedy Dep. 253:20-254:6.  The June 14, 2010 letter

from Eleanor D. Zappone of Arent Fox, and on behalf of Mrs. Ethel Kennedy and Plaintiff, *id.*, thus indicated that, as of that date, Mrs. Ethel Kennedy as yet had not gifted the urn to Plaintiff, and only that Mrs. Ethel Kennedy, roughly six months after the closing of the real estate transaction, merely "desire[d]" to gift the urn to Plaintiff. *Id.*, Ex. 13, DX-45 at 2. In sum, any gift by Mrs. Ethel Kennedy to Plaintiff appears to have occurred after the December 2009 sale of the Hickory Hill property to Mr. Dabbiere.

During her deposition, Plaintiff also testified that Mrs. Ethel Kennedy allegedly said Plaintiff could "choose three items from Hickory Hill." App'x Ex. 3, Kennedy Dep. 211:20-15; *see also id.* 218:6-10 (Q. "So your testimony is that your mother said to you and your multiple siblings that each one of you could pick three items; is that correct?" A. "Correct."). Plaintiff could not recall when this conversation took place, testifying it was "sometime in that period when she was selling the house." *Id.* 210:19-25, 211:16-19. Plaintiff testified that the lawn urn was one of the three items that Plaintiff wanted, but Plaintiff could not recall any specific conversation in which she actually identified to her mother, Mrs. Ethel Kennedy, that the lawn urn was one of the three items that she desired. App'x Ex. 3, Kennedy Dep. 224:24-225:4 (Q. "So just so our record's clear, you don't remember the conversation in which you identified the three items for your mother directly, correct?" A. "I do not, that's correct."); *see also id.* 226:17-227:7 ("I don't recall the precise conversation, nor the date of that conversation."). When asked what Mrs. Ethel Kennedy said to Plaintiff in response to Plaintiff's allegedly identifying the three items, Plaintiff testified, "well, I don't recall a discussion about it. I just said these are the three items, or I let her know that, or I let Anne Phelan [Mrs. Ethel Kennedy's Personal Assistant] know that. It was not a very formal process." *Id.* 221:7-14. In other words, any request by Plaintiff for a gift of the urn could have been directed to Anne Phelan rather than to Mrs. Ethel Kennedy. *See id.*

On October 12, 2020, Defendant sought discovery from Plaintiff about, among other things, all "documents related to the allegation in Paragraph 32 of the Complaint that 'Mrs. Ethel S. Kennedy gave the urn to her daughter, Kerry Kennedy, in 2009 prior to selling the Hickory Hill property to defendant Dabbiere.'" Mansfield Decl., ¶¶ 22-23; App'x Exs. 17, 18 at No. 21. Following a "meet and confer" about the adequacy of Plaintiff's discovery responses and document production, Arent Fox (counsel for Plaintiff and for Mrs. Ethel Kennedy) on January 11, 2021 confirmed in writing that

> with regard to both the Kerry Kennedy and Mrs. Ethel Kennedy document productions (specifically, KK Requests Nos. 1-18 and 21-24 and ESK Requests Nos. 1-23) that no documents had been withheld from production on any basis other than privilege, and that both Kerry and Mrs. Kennedy had produced all responsive, non-privileged documents in their possession, custody, or control. We are presently confirming in writing that this is accurate.

Mansfield Decl., ¶ 29, App'x Ex. 24, January 11, 2021 Letter. Plaintiff produced no documents generated contemporaneous with any intent of Mrs. Ethel Kennedy to gift the urn to Plaintiff in the "spring of 2010." Mansfield Decl., ¶¶ 3-4; *see also* App'x Ex. 3, Kennedy Dep. 219:3-10 (testifying that only in connection with preparing for her 2021 deposition had Plaintiff seen notes taken by Mrs. Ethel Kennedy's Personal Assistant, Anne Phelan, in 2010, that mentioned the urn).

Early in the discovery period, Defendant served a subpoena *duces tecum* on Mrs. Ethel Kennedy seeking, among other things, "[a]ll gift tax or other records concerning any gifts from you of any item(s) at the Hickory Hill property to any of your children, including Plaintiff, in 2008 or 2009." Mansfield Decl., ¶¶ 24, 27, App'x Ex. 19, 21 at No. 20. Following a January 8, 2021 meet and confer conference about Mrs. Kennedy's subpoena objections, Arent Fox (Counsel for Mrs. Ethel Kennedy and Plaintiff) represented that "Mrs. Ethel Kennedy did not file a gift tax return in 2010." Mansfield Decl., ¶ 29, App'x Ex. 24, January 11, 2021 Letter. Counsel for

Defendant sought further clarification in a January 14, 2021 letter about "whether any gift tax records concerning the urn exist (without regard to the date of any such tax record)." Mansfield Decl., ¶ 30, App'x Ex. 25. On January 20, 2021, Arent Fox confirmed that "there are no additional documents responsive to your numbered paragraph 2." Mansfield Decl., ¶ 31, App'x Ex. 26. In short, Mrs. Ethel Kennedy filed no gift tax return in any year concerning the urn.

Moreover, on or about October 30, 2020, Defendant served a deposition subpoena to Mrs. Ethel Kennedy. Mansfield Decl., ¶ 25, App'x Ex. 20. Plaintiff's counsel was "retained to represent Mrs. Ethel Kennedy." Mansfield Decl., ¶ 26, App'x Ex. 22, November 11, 2020 Wahl Email. Ms. Wahl's November 11, 2020 email proposed that Defendant first "review the documents that are being produced to determine in good faith if a deposition [of Mrs. Kennedy] is necessary." *Id*. Defendant complied with Ms. Wahl's request, and on December 22, 2020 – after reviewing Mrs. Kennedy's document production – renewed his request for Mrs. Kennedy's deposition. Mansfield Decl., ¶ 28, App'x Ex. 23, December 22, 2020 Email. Defendant's counsel offered to "conduct the deposition by Zoom and . . . of course, make every reasonable accommodation to reduce any burden on Mrs. Kennedy." *Id*. Ultimately, on January 11, 2021, Arent Fox (counsel for Mrs. Ethel Kennedy and Plaintiff) represented that Mrs. Ethel Kennedy "will not consent to appear for a deposition by oral examination" and "will not be a witness at any trial in this matter." Mansfield Decl., ¶ 29, App'x Ex. 24.

**E.      The June 16, 2010 Agreement.**

Shortly after Defendant first learned that Plaintiff intended to take possession of the urn, Plaintiff and Defendant communicated through counsel. Following a telephone conversation, and based on Plaintiff's representations about the origin of the urn, Defendant entered into an agreement with Plaintiff:

> [T]he purpose of this email is to memor[ialize] our conversation that the Urn in the front of Hickory Hill will remain as your property and we give up any rights to it conveying with the property and in exchange you agree that the Urn will stay in its current place for 10 years from today's date — June 16th, 2010. At that time you are free to take the urn. I will sign a copy of this email and send you a signed PDF version via email.

App'x Ex. 14, DX-47. Plaintiff affirmatively pled that her "ownership rights in and entitlement to physical possession of the Urn" constitute her "consideration" in making the June 2010 Agreement. Am. Compl. ¶ 15. Plaintiff further alleges that "[t]he Contract is . . . supported by valuable consideration, consisting of each party's concessions of their disputed positions regarding ownership and conveyance, or not, of the Urn at the time of the conveyance of the Hickory Hill property." *Id*. ¶ 38. Yet Plaintiff admits that she could not recall any specific conversation (or the timing or other details about any conversation) in which she articulated to her mother, Mrs. Ethel Kennedy, that the urn was an item from the Hickory Hill property that she desired. App'x Ex. 3, Kennedy Dep. 210:19-25, 211:16-19, 221:7-14, 224:24-225:4; 226:17-227:7; *see supra* p. 8.

### III.     STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      A nearly 6-foot tall, 5-foot wide ornamental lawn urn sits in front of the Hickory Hill property. ECF 47-3, Pl's Resp. to Def's Stip. Fact Nos. 28; ECF 13, Am. Compl. at 3 (picture of the lawn urn).

2.      The lawn urn has been situated on the Hickory Hill property, and in front of the residence, since at least 1941. App'x Ex. 3, Kennedy Dep. 68:8-11; *id.* Ex. 1, Dabbiere Dep. 59:8-20.

3.      On or about August 1, 1941, the Honorable Robert J. Jackson, nominated to the U.S. Supreme Court, signed a memorandum with Leo and Leonora Rocca, then the owners of the Hickory Hill property (the "1941 memorandum") that provides that:

This memorandum of understandings reached between Mr. Rocca and myself constitutes a part of the purchase agreement for the property at Langley, Virginia, known as Hickory Hill.

The following personal property will remain with the real estate and become the property of the purchaser:

Lawn mower, trailer, tractor, and **lawn urn**, and the following items in the house: Hall, stair, and master bedroom carpets; attic table and benches; gas stove and refrigerator in the kitchen; and the piano.

While we anticipate no such event, it is understood that I have no use for the property except in event that my pending nomination is confirmed. In event of failure of confirmation, the purchase will not be effective.

ECF 42-2 at 6-7 ¶ 30 (emphasis added); ECF 47-3, Pl's Resp. to Def's Stip. Fact No. 2; App'x Ex. 3, Kennedy Dep. 60:20-23; *id.* at Ex. 4, PX-3.

    4.    Plaintiff and Defendant agree the "lawn urn" identified in the 1941 memorandum is the lawn urn at issue in this lawsuit. App'x Ex. 3, Kennedy Dep. 68:8-11; *id.* Ex. 1, Dabbiere Dep. 59:8-20.

    5.    Since the 1940s, the Hickory Hill property has conveyed in six real estate transactions:

(a)    Leo and Leonora Rocca conveyed the property to the Honorable Robert and Mrs. Irene Jackson by deed dated July 9, 1941, App'x Ex. 5, PX-4;

(b)    The Honorable Robert and Mrs. Irene Jackson conveyed the property to the Honorable Robert Jackson individually by deed dated January 10, 1944, Dabbiere Dec. ¶ 2, Ex. B, AJD0000117;

(c)    The executors and heirs of the estate of the Honorable Robert Jackson conveyed the property to John F. Kennedy by deed dated October 15, 1955, App'x Ex. 6, PX-6;

(d)    John F. Kennedy and Jacqueline B. Kennedy conveyed the property to Joseph Kennedy by deed dated January 2, 1957, App'x Ex. 7, PX-7;

(e)    Joseph P. Kennedy and Rose F. Kennedy conveyed the property to Mrs. Ethel Kennedy individually by deed dated January 8, 1965, App'x Ex. 8, PX-8; and

(f)     Mrs. Ethel Kennedy conveyed the property to Mr. Alan Dabbiere by deed dated December 23, 2009, Dabbiere Decl. ¶ 3, Ex. C, AJD0000051-56.

ECF 42-2, Pl's Prop. Stip. Facts at 2, Nos. 6a-e; ECF 49, Def's Obj. to Pl's Prop. Stip. Facts at 3 (agreeing that Fact Nos. 6a-e are supported by the record).

6.     During the time that Plaintiff resided at the Hickory Hill property, the lawn urn was situated in the same location in the front of the Hickory Hill property.  ECF 47-3, Pl's Resp. to Def's Stip. Fact No. 29; App'x Ex. 3, Kennedy Dep. 256:16-21.

7.     During the time that Plaintiff resided at the Hickory Hill property, Plaintiff never observed anyone attempting to move the urn. ECF 47-3, Pl's Resp. to Def's Stip. Fact No. 29; App'x Ex. 3, Kennedy Dep. 37:16-19.

8.      During the time that Plaintiff resided at the Hickory Hill property, the lawn urn in front of the Hickory Hill property was held in place by gravity.  ECF 47-3, Pl's Resp. to Def's Stip. Fact No. 30, App'x Ex. 3, Kennedy Dep. 36:24-37:2.

9.     During the time that Plaintiff resided at the Hickory Hill property, Plaintiff does not recall any instance of the lawn urn being moved by wind, storms, or other inclement weather. ECF 47-3, Pl's Resp. to Def's Stip. Fact No. 31; App'x Ex. 3, Kennedy Dep. 37:3-15.

10.     Plaintiff is "confident that [she] could not pick up th[e] urn alone and move it." ECF 47-3, Pl's Resp. to Def's Stip. Fact No. 32; Kennedy Dep. 38:17-18.

11.     Any attempt to move the urn required special arrangements.  App'x Ex. 3, Kennedy Dep. 250:7-15; App'x Ex. 11, DX-42 (describing $8,000 in costs associated with proposed pick-up and transport of the urn); App'x Ex. 1, Dabbiere Dep. 129:9-11.

12.     On or about December 17, 2009, Defendant and Mrs. Ethel Kennedy entered into a Purchase Agreement for the sale of the Hickory Hill property for $8.25 million.  ECF 47-3, Pl's Resp. to Def's Stip. Fact No. 20; App'x Ex. 10, DX-26.

13.     Plaintiff is not a party to the 2009 Purchase Agreement.  App'x Ex. 3, Kennedy

Dep. 197:6-7 (Q. "Are you a party to this agreement?" A. "No.").

14.     Under the terms of the Purchase Agreement, "Purchaser agree[d] to acquire the

Property, and Seller agree[d] to sell the Property, pursuant to the terms and conditions set forth

herein."  ECF 47-3, Pl's Resp. to Def's Stip. Fact No. 22; App'x Ex. 10, DX-26 at § 1.

15.     Paragraph B of the Recitals to the Purchase Agreement states:

> Purchaser desires to acquire such real property, and Seller desires to sell such real
> property, together with all right, title and interest of seller, if any, to the extent same
> may be appurtenant to such real property, with respect to any land lying in the bed
> of any existing, dedicated street, road or alley, all strips and gores adjoining thereto
> and all appurtenances, rights, privileges, licenses, easements, rights-of-way,
> covenants, development rights, tenements, or hereditaments incident thereto
> (collectively, the "Land"), and also including the improvements situated thereon,
> and all right, title and interest of Seller, in and to those fixtures situated thereon and
> used in connection with such improvements (excluding however, the excluded
> personal property described on Exhibit F attached hereto), (such improvements and
> fixtures, exclusive of the excluded personal property, collectively, the
> "Improvements").  The Land and Improvements are hereinafter referred to as the
> "Property").

ECF 47-3, Pl's Resp. to Def's Stip. Fact No. 21.

16.     The real estate transaction closed on or about December 23, 2009.  ECF 47-3, Pl's

Resp. to Def's Stip. Fact No. 31.

17.     Defendant received a brochure when he viewed the Hickory Hill property in 2005

that, under a column heading "Residence," identified "a tall Edwardian urn on the front lawn."

App'x Ex. 1, Dabbiere Dep. 76:4-77:16; Dabbiere Decl. ¶ 1, Ex. A.

18.     There are six versions of the brochure from 2003 to 2008 that each contain the same

sentence about the urn.  ECF 42-2, Pl's Stip. Fact No. 34; App'x Ex. 1, Dabbiere Dep. 84:23-85:3.

19.     Ethel Kennedy did not take steps to sever the urn from the Hickory Hill property

before or in connection with the 2009 Purchase Agreement.  App'x Ex. 3, Kennedy Dep.  219:3-

13 (Q. "Did you and your mother document in writing in any way your desire for these three items, and that these three items go to you instead of your siblings or anything of the sort?" A. "I have seen that in a document that Anne Phelan created [in 2010], but I need to – yes, okay, I'll leave it at that" and further testifying that she had seen Ms. Phelan's 2010 notes only in connection with preparing for her deposition in 2021); ECF 47-3, Pl's Resp. to Def's Stip. Fact Nos. 23-25 (conceding that the Purchase Agreement, including Exhibit F "Excluded Personal Property," does not mention the urn).

20.     In or around late 2009, Ted Gossett and Florence Meers of Washington Fine Properties circulated by mail an announcement that includes a photograph of the front of the Hickory Hill, which photograph includes the urn, and states that the property has been "Listed & Sold." ECF 47-3, Pl's Resp. to Def's Stip. Fact No. 27.

21.     During discovery, Arent Fox (counsel for Mrs. Ethel Kennedy and Plaintiff) represented that Mrs. Ethel Kennedy gave the lawn urn to Plaintiff "in the spring of 2010." Mansfield Decl., ¶ 32, App'x Ex. 27, January 21, 2021 Letter.

22.     Plaintiff testified that Mrs. Ethel Kennedy "gave me the urn sometime in that period when she was selling the house and when, you know, in that period. I can't tell you the exact date, but she said that, yes, I'll leave it at that." App'x Ex. 3, Kennedy Dep. 210:21-25.

23.     During her deposition, Plaintiff testified that Mrs. Ethel Kennedy said Plaintiff could "choose three items from Hickory Hill." App'x Ex. 3, Kennedy Dep. 211:20-15. Plaintiff could not recall a specific date as to when this conversation took place, testifying that it was "sometime in that period when she was selling the house." *Id.* 210:19-25, 211:16.

24.     Plaintiff testified that the lawn urn was one of the three items that Plaintiff wanted, but Plaintiff could not recall any specific conversation in which she actually identified to her

mother, Mrs. Ethel Kennedy, that the lawn urn was one of the three items that she desired. App'x Ex. 3, Kennedy Dep. 224:24-225:4; *see also id.* 226:17-227:7.

25.     When asked what Mrs. Ethel Kennedy said to Plaintiff in response to Plaintiff's allegedly identifying the three items, Plaintiff testified, "well, I don't recall a discussion about it. I just said these are the three items, or I let her know that, or I let Anne Phelan [Mrs. Ethel Kennedy's Personal Assistant] know that.  It was not a very formal process."  App'x Ex. 3, Kennedy Dep. 221:7-14.

26.     Mrs. Ethel Kennedy did not file a gift tax return in any year concerning the urn. Mansfield Decl., ¶ 29, App'x Ex. 24, January 11, 2021 Letter.

27.     Plaintiff did not produce any documents in response to Defendant's request for production of any documents evidencing a gift of the urn.  Mansfield Decl., ¶¶ 3-4; App'x Ex. 3, Kennedy Dep. 219:3-13.

28.     Mrs. Ethel Kennedy did not provide deposition testimony about allegedly gifting the urn to Plaintiff.  Mansfield Decl., ¶ 29, App'x Ex. 24, January 11, 2021 Letter.

29.     Mrs. Ethel Kennedy did not provide deposition testimony about her decision to feature the urn in six sales brochures used in marketing the Hickory Hill property.  Mansfield Decl., ¶ 29, App'x Ex. 24, January 11, 2021 Letter.

30.     Plaintiff  alleges that "[t]he Contract is supported by consideration, as stated and identified in the Contract itself: defendant Dabbiere acknowledged Ms. Kennedy's ownership rights in and entitlement to physical possession of the Urn and in exchange received permission to possess the Urn for a limited period of ten years," ECF 13 at ¶ 15, and that the "consideration" consists "of each party's concessions of their disputed positions regarding ownership and

conveyance, or not, of the Urn at the time of the conveyance of the Hickory Hill property." ECF 13 at ¶ 38.

## IV.    ARGUMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A.    The Lawn Urn Conveyed with the 2009 Real Estate Transaction.

Plaintiff seeks a declaration that the urn did not convey in connection with the 2009 real estate transaction, Am. Compl. ¶ 50, even though the urn clearly conveyed with the Hickory Hill property in prior real estate transactions that took place in 1941, 1944, 1955, 1957, and 1965. Under well-settled fixture law, the lawn urn became part of the Hickory Hill property – *i.e.*, a fixture or improvement – when the Rocca family conveyed the Hickory Hill property to the Jackson family in 1941. The lawn urn has remained part of the property ever since, given that no owner has "severed" the lawn urn and thus restored its character of personal property distinct from the land. App'x Ex. 3, Kennedy Dep. 84:24-85:3 (Q. "You agree with me, though, that the JFK Kennedy family came to acquire the lawn urn when they acquired Hickory Hill?" A. "Correct." ); *id.*, 85:23-86:4 (Q. "In your understanding, the lawn urn transferred from the John F. Kennedy family to the Joseph Kennedy family in connection with that transaction in 1957, correct?" A. "Correct."). Therefore, the lawn urn today is either a "fixture" or "improvement" (or both) to the Hickory Hill property and thus conveyed to Defendant under the terms of the 2009 real estate transaction.

### 1. The lawn urn has been a fixture or improvement since at least 1941.

"A fixture can best be defined as a thing which, although originally a movable chattel, is by reason of its annexation to, or association in use with land, regarded as a part of the land . . . ." Black's Law Dictionary, "Fixture" (11th ed. 2019) (quoting Ray Andrews Brown, *The Law of Personal Property* § 137, at 698 & n.1 (2d ed. 1955)). Put another way, the fixture test determines "whether an item of personal property upon realty *itself becomes realty*." *AGCS Marine Ins. Co. v. Arlington Cty.*, 293 Va. 469, 495, 800 S.E.2d 159, 174 (2017) (emphasis in original) (quoting *State Highway & Transp. Comm'r v. Edwards Co.*, 220 Va. 90, 94, 255 S.E.2d 500, 503 (1979)). "Because fixtures are considered to be part of realty, they are conveyed when the real estate to which they are affixed is conveyed unless they are specifically excluded." 36A C.J.S. Fixtures § 28.

Once an item becomes a fixture, it is treated as part of the realty until or unless it is severed by the fee owner and becomes personal property again. 36A C.J.S. Fixtures § 52; *see also Myers v. Hancock*, 185 Va. 454, 458, 39 S.E.2d 246, 247-48 (1946). "This severance may be actual, by detachment of the fixture, or it may be constructive, by express or implied agreement to that effect on the part of the owner of the land." *Myers*, 185 Va. at 458, 39 S.E.2d at 248. "An unexecuted intent to sever is ineffective." 36A C.J.S. Fixtures § 52.

Under Virginia law, "it is well settled that the contract of the parties will fix the character and control the disposition of personal property . . . ." *Dowdy v. Silverstein*, Nos. 4626 and 6174, 1981 WL 180584, at *3-4 (Va. Cir. Ct. Aug. 4, 1981). While there are "three general tests" for determining whether property constitutes a fixture at common law, these tests do not apply unless there is an "absence of any specific agreement between the parties as to the character of a chattel placed upon the freehold." *Ferguson v. Stokes*, 287 Va. 446, 453-54, 756 S.E.2d 455, 459 (2014).

- 18 -

In this case, the 1941 memorandum "constitutes a part of the purchase agreement for the *property* at Langley, Virginia, known as Hickory Hill." ECF 42-2 at 6-7 ¶ 30 (emphasis added). Justice Jackson wrote that "[t]he following *personal property*," including the "lawn urn," "will *remain with the real estate* and become *the property* of the purchaser." *Id.* (emphasis added). This memorandum could not be more clear: The parties to the 1941 real estate transaction agreed[2] that the urn, "an item of personal property upon realty," *AGCS Marine Ins. Co.*, 293 Va. at 495, 800 S.E.2d at 174, would "remain with the real estate" and itself become part of the Hickory Hill property. ECF 42-2 at 6-7 ¶ 30. Therefore, there is no genuine dispute that the lawn urn conveyed with, and became part of, the Hickory Hill property in 1941.

**2.      There is no evidence the lawn urn reverted back to personal property.**

The lawn urn remained a fixture "until or unless" it was, in fact, severed from the realty by the fee owner. 36A C.J.S. Fixtures § 52. "A severance, to be valid and effective, must, generally speaking, be by the owner of the land, since he or she is the only person who has any right of control over the articles annexed thereto . . . ." *Id.*; *Myers*, 185 Va. at 458, 39 S.E.2d at 247-48 ("[T]he fee simple owner, after annexing the chattels and thus giving them the character of real

---

[2]    In making clear that the lawn urn "shall remain with the real estate," the 1941 memo demonstrates an intent that the urn was to be made a fixture or improvement of the real property (or is at least entitled to the same evidentiary presumptions that fixtures are afforded). App'x Ex. 4, PX-3. Indeed, the subsequent real estate transactions confirm that the urn "remain[ed] with the real estate," and there is no evidence of any subsequent intent to sever the urn from the real estate. App'x Ex. 3, Kennedy Dep. 84:24-85:3 (acknowledging that the John F. Kennedy family came to own the lawn urn with the acquisition of the Hickory Hill property in 1955), *id.* 85:23-86:4 (confirming that the Joseph P. Kennedy family acquired the urn in connection with the 1957 sale of the Hickory Hill property); *id.* 89:17-90:3 (agreeing that the lawn urn transferred to the Robert F. Kennedy family in connection with the 1967 conveyance of the Hickory Hill property). In sharp contrast, the other items identified in the 1941 memo, such as the tractor, gas stove, and piano, apparently were severed from the real estate in the years following 1941, or simply discarded, and there is no evidence that these items conveyed with the real estate in any subsequent transactions. In further contrast to the urn, the other items identified in the 1941 memo were not included (much less highlighted) over sixty years later in sales brochures for the Hickory Hill property. *See, e.g.,* Dabbiere Decl. at ¶ 1, Ex. A.

estate, may, at any time before the rights of third parties to the land intervene, sever the connection, and thus restore to the chattels their character of personalty distinct from the land.").

In this case, Mrs. Ethel Kennedy was the seller of the Hickory Hill property. There is no evidence that Mrs. Ethel Kennedy, before the 2009 real estate transaction with Defendant, severed the lawn urn from the Hickory Hill property, either actually or constructively. In fact, the sales brochures used to market the Hickory Hill property described "[a] tall Edwardian urn on the front lawn." ECF 42-2, Pl's Stip. Fact No. 34; *see also* App'x Ex. 3, Kennedy Dep. 146:6-23, 165:18-166:4, 168:6-16, 172:13-18. Therefore, there is no genuine dispute that the lawn urn remained a fixture on the Hickory Hill property while Mrs. Ethel Kennedy owned the Hickory Hill property and through the time of the 2009 real estate transaction.

### 3. The urn is a fixture under the common law.

In addition to the 1941 memorandum, the urn satisfies the three "general tests" of being a fixture under Virginia common law: "(1) Annexation of the chattel to the realty, actual or constructive; (2) Its adaptation to the use or purpose to which that part of the realty to which it is connected is appropriated; and (3) The intention of the owner of the chattel to make it a permanent addition to the freehold." *Ferguson*, 287 Va. at 453-54, 756 S.E.2d 455, 459 (citing *Danville Holding Corp. v. Clement*, 178 Va. 223, 231-32, 16 S.E.2d 345, 349 (1941)).

The Virginia Supreme Court "has recognized that '[t]he intention of the party making the annexation is the paramount and controlling consideration.'" *Ferguson*, 287 Va. at 453-54, 756 S.E.2d 455, 459 (alteration in original). "In Virginia, a presumption arises that where the person making the annexation is the owner of the realty, the chattel is a fixture." *In re Alterman*, 127 B.R. 356, 360-62 (Bankr. E.D. Va. 1991); *see also In re Banks*, 259 B.R. 848, 851 (Bankr. E.D. Va. 2001) ("The Virginia Supreme Court has indicated that '[w]hen the owner of land annexes chattels,

any doubt as to his intention to annex them permanently will usually be resolved in favor of such intent.'"); *In re Jessee's Paving Co. v. White Excavating Co.*, 39 B.R. 265, 267 (Bankr. W.D. Va. 1983) (recognizing the presumption arises "upon the theory that [the owner of reality] seeks to permanently enhance the usefulness and market value of his property").

Plaintiff and Defendant agree that ownership of the lawn urn passed from the Rocca family to the Jackson family in 1941. App'x Ex. 3, Kennedy Dep. 68:8-11, 75:6-21; *id.* at Ex. 1, Dabbiere Dep. 59:8-20. As a result, even without the 1941 memorandum, an evidentiary presumption arises that the Rocca family intended to annex the lawn urn to the realty, and indeed, "to permanently enhance the usefulness and market value of his property." *In re Jessee's Paving Co.*, 39 B.R. at 267.

As for the second test, courts have recognized that lawn ornaments constitute fixtures that pass with the land when, as here, the "design and location of the [ornament] [is] in every respect appropriate, in good taste, and in harmony with the surrounding objects and circumstances." *Snedeker v. Warring*, 12 N.Y. 170, 177-78 (1854); *see also* 50 A.L.R. 640 ("In the few cases that have arisen with respect to other kinds of ornaments, the courts have generally held that where ornaments placed in a garden, yard, or park, though actually unattached to the land, are of large size and weight, or architecturally conform to the premises, they are to be considered fixtures and pass with the land.") (collecting cases).

For example, in *Snedeker*, the court considered whether both a statue "placed in a court yard before the house," and affixed by "its own weight," and a sun-dial weighing two hundred pounds, constituted real property. *Id.* In holding that both were fixtures, the court reasoned the statue was "peculiarly fitted as an ornament for the grounds in front of that particular house" and the sun-dial was "appropriately located on a solid and durable foundation" and "it was in every

respect adapted to the place." *Id.* at 178-80; *see also Oakland Cemetery Co. v. Bancroft*, 161 Pa. 197, 199 (1894) (holding that ornamental statue and marble base were fixtures, which passed with conveyance of the land, even though neither were actually attached to the land).

Here, the lawn urn was situated in the same location in the front of the Hickory Hill property during the entire time that Plaintiff resided at the property, *see* App'x Ex. 3, Kennedy Dep. 256:16-21, and Plaintiff never observed anyone attempting to move the urn. *Id.* at 37:16-19; ECF 47-3, Pl's Resp. to Def's Stip. Fact Nos. 20, 26. The lawn urn was "in every respect adapted to" the Hickory Hill property; indeed, it was expressly highlighted in the sales brochures used to market the property. ECF 42-2, Pl's Stip. Fact No. 34; *see also* App'x Ex. 3, Kennedy Dep. 146:6-23, 165:18-166:4, 168:6-16, 172:13-18.

Finally, the "method of the annexation to the realty receives slight consideration and then only as a circumstance from which the intention of the annexor may be deduced." *Danville Holding Corp.*, 178 Va. at 231-32, 16 S.E.2d at 349; *see also In re Alterman*, 127 B.R. at 360-62 ("In Virginia, while there must be actual or constructive annexation, the method or extent of annexation is given little weight."). For more than 150 years, the common law of fixtures has recognized that "[a] thing may be as firmly affixed to the land by gravitation as by clamps or cement." *Town of Stratford v. Jacobelli*, No. CV116013854, 2013 WL 5969127, at *4 (Conn. Super. Ct. Oct. 23, 2013), *aff'd*, 317 Conn. 863, 120 A.3d 500 (2015).

"[M]any jurisdictions have concluded, in the context of fixtures law, that an object may be 'affixed to the land' solely by force of gravity. *See, e.g., Rinaldi v. Goller*, 48 Cal.2d 276, 279, 309 P.2d 451 (1957) ("It is settled . . . that a building need not be physically anchored to the land to be considered realty. It may be found to be a fixture though it is secured to the realty by force of gravity alone."); *Seatrain Terminals of California, Inc. v. Cty. of Alameda*, 83 Cal.App.3d 69,

75, 147 Cal.Rptr. 578 (1978) (objects not attached to land by bolts, screws or similar means may

be considered "affixed" to realty when their weight is sufficient to hold them in place by gravity);

*General Motors Corp. v. Linden*, 20 N.J.Tax 242, 324 (2002) ("[a]n item of personal property not

physically attached or fastened to a building or land will be deemed affixed [when] the item is

sufficiently large and heavy that gravity alone holds it in place and the building or land has been

specially modified or adapted to accommodate or enclose the item"); *Seven–Up Bottling Co. of*

*Salem, Inc. v. Dept. of Revenue*, 10 Or. Tax 400, 404 (1987) ("large items may be found

constructively 'affixed' to the land or buildings merely by virtue of their weight and size"); *John*

*Wagner Assocs. v. Hercules, Inc.*, 797 P.2d 1123, 1128 (Utah App. 1990) (building may be

"attached" to realty by force of gravity alone), *cert. denied*, 815 P.2d 241 (Utah 1991)." *Historic*

*Dist. Comm'n of Town of Fairfield v. Hall*, 282 Conn. 672, 682-83, 923 A.2d 726, 733 (2007): *see*

*also Waldorf v. Elliott*, 214 Or. 437, 442 (1958) (citation omitted) ("Heavy and permanent

additions to a freehold have been regarded as fixtures although not actually annexed to the realty

and held in place only by the force of gravity.  There is no reason why one object should not be

deemed a fixture merely because it is heavy and requires no attachment when a lighter object can

be said to have passed the test of annexation because its lightness requires some sort of device to

attach it to the realty.").

The fixture[3] at issue here is a nearly 6-foot tall, 5-foot wide ornamental lawn urn sits in

front of the Hickory Hill property.  Am. Countercl. ¶ 9; Ans. to Ans. to Am. Countercl. ¶ 9; *see*

---

[3]  Plaintiff contends that the urn is not a fixture and instead constitutes personal property, even
though Plaintiff admits that she never heard her mother, Mrs. Ethel Kennedy, refer to the lawn urn
as "personal property."  App'x Ex. 3, Kennedy Dep. 108:6-15.  Notwithstanding the urn's scale
and weight, Plaintiff maintains that the urn constitutes personal property just like her mother's
pencils, paintings, and books.  *Id.* 106:23-107:4.  According to Plaintiff, in order for the urn to
qualify as a fixture, it would need to be attached to the residence with wires.  *Id.* 50:14-51:6. (Q.
"[W]hat other characteristics would the urn need to have in order to be deemed a fixture, in your

- 23 -

*also* ECF 47-3, Pl's Resp. to Def's Stip. Fact Nos. 28.  During the time that Plaintiff resided at the Hickory Hill property, the lawn urn in front of the Hickory Hill property was held in place by gravity.  Pl's Resp. to Def's Stip. Fact No. 30; App'x Ex. 3, Kennedy Dep. 36:24-37:2.  During the time that Plaintiff resided at the Hickory Hill property, Plaintiff does not recall any instance of the lawn urn in front of the Hickory Hill property being moved by wind, storms, or other inclement weather.  Pl's Resp. to Def's Stip. Fact No. 31; App'x Ex. 3, Kennedy Dep. 37:3-15.  Plaintiff is "confident that [she] could not pick up th[e] urn alone and move it."  Pl's Resp. to Def's Stip. Fact No. 32; App'x Ex. 3, Kennedy Dep. 38:17-18.

In short, it is undisputed that the urn is held in place by gravity.  ECF 47-3, Pl's Resp. to Def's Stip. Fact No. 30.  It is also undisputed that the urn had been on the Hickory Hill property for almost seventy years before Defendant's purchase of the Hickory Hill property in 2009.  Pl's Resp. to Def's Stip. Fact No. 2.  Therefore, even without the 1941 memorandum, the urn is properly considered a fixture under Virginia common law.

**4.      The urn is an improvement.**

The Purchase Agreement included the "Land" and all "improvements situated thereon." App'x Ex. 10, DX-26.  Under Virginia law, "the word 'improvement' is a comprehensive term, which includes in its meaning any development whereunder work is done and money expended with reference to the future benefit or enrichment of the premises."  *Eppes v. Eppes*, 181 Va. 970, 988, 27 S.E.2d 164, 172 (1943); *Taylor v. Wal-Mart Stores, Inc.*, No. 299CV00068, 2001 WL 418740, at *1 (W.D. Va. Mar. 12, 2001) (applying Virginia law) ("The term has been interpreted to comprise any addition or other change in the structure of a building calculated to add to its

---

understanding?"  A. "I think if you picked it up, brought it inside, attached a huge wire to it, put a thousand light bulbs inside and affixed it to the side of the wall, you could call it a fixture.").

useable value."); *Sellers v. Bles*, 198 Va. 49, 55, 92 S.E.2d 486 (1956) (defining "improvement" as "a valuable addition, or betterment, as a building, clearing, drain, fence, etc., on land."). "A fixture by definition, is an improvement to real property, but an improvement to real property need not be a fixture." *Taylor*, 2001 WL 418740, at *2 n.3 (citing 41 Am. Jur. 2d *Improvements* § 1 (1995)).

In this case, there is no genuine dispute that the urn added value to the Hickory Hill property as of the time of Defendant's purchase in 2009. This lawn urn has extraordinary history and value; Plaintiff and Defendant both agree the value of the urn exceeds $75,000. Am. Compl. ¶ 4; Am. Countercl. ¶ 3. The Hickory Hill residence plays an important part of American history, and the lawn urn dates all the way back to Justice Jackson, who specifically asked that it "remain with the real estate." ECF 42-2 at 6-7 ¶ 30; App'x Ex. 4, PX-3. As such, the lawn urn became an "improvement" under Virginia law when the Rocca family passed it on to the Jackson family. The lawn urn remained an "improvement" when the Hickory Hill property conveyed to John F. Kennedy, and then to Joseph Kennedy, and then to Mrs. Ethel Kennedy. And, certainly, the lawn urn was an "improvement" by the time the Hickory Hill property conveyed to Defendant in 2009, having carried with it the history and legacy of the Hickory Hill property for at least the prior seventy years. Therefore, the urn constitutes an "improvement[] situated" on the Land under the Purchase Agreement. App'x Ex. 10, DX-26 at 1.

### 5. The urn was meant to convey with the Hickory Hill property.

If there is any doubt as to whether the urn constituted a fixture or improvement under the Purchase Agreement, such that it was intended to convey to Defendant in the 2009 real estate transaction, the Court should look to the circumstances surrounding that transaction. Under Virginia law, "parol evidence is always admissible, not to contradict or vary the terms, but to

US2008 18218816 1

establish the real contract between the parties." *In re Alterman*, 127 B.R. at 360 (citing *Shockey v. Westcott*, 189 Va. 381, 389, 53 S.E.2d 17, 20 (1949)). What's more, the parol evidence rule "only applies to controversies between parties to the contract . . . . It does not apply to controversies between parties to the writing and third persons." *Id.* (citing *McComb v.* McComb, 226 Va. 271, 274, 307 S.E.2d 877, 879 (1983)). It is undisputed that Plaintiff is not a party to the 2009 Purchase Agreement. App'x Ex. 3, Kennedy Dep. 197:6-7.

Multiple sales brochures used to market the Hickory Hill property each described "[a] tall Edwardian urn on the front lawn." ECF 42-2, Pl's Stip. Fact No. 34; *see also* App'x Ex. 1, Dabbiere Dep. 84:23-85:3 (Q. "What we have seen as we looked through these [brochures] is that the same 'a tall Edwardian urn' sentence existed unchanged in all six versions from 2003 to 2008; correct?" A. "Correct."). Further, there is no evidence that Mrs. Ethel Kennedy took steps, pre-closing to memorialize, in writing, a desire to retain the urn as personal property. ECF 47-3, Pl's Resp. to Def's Stip. Fact Nos. 23-25 (conceding that the Purchase Agreement, including Exhibit F "Excluded Personal Property," does not mention the urn). In fact, Arent Fox's June 14, 2010 letter on behalf of Mrs. Ethel Kennedy and Plaintiff, App'x Ex. 3, Kennedy Dep. 253:20-254:6, stated that Mrs. Ethel Kennedy, roughly six months after the closing of the real estate transaction with Defendant, merely "desire[d]" to gift the urn to Plaintiff, implying that no gift as yet had occurred. *Id.*, Ex. 13, DX-45 at 2. *See Prospect Dev. Co. v. Bershader*, 258 Va. 75, 84, 515 S.E.2d 291, 296 (1999) (representations by seller's agent about the terms of the real estate contract, including statements made in brochures, were admissible to explain what the sales price included). All of this evidence stands unrebutted, especially given that Mrs. Ethel Kennedy, the other party to the 2009 real estate transaction, refuses to provide any testimony in this action. Accordingly, the urn "remained with the property" and conveyed to Defendant in 2009 just as it had in 1941, in 1944,

in 1955, in 1957, and again in 1965.  *See* ECF 42-2, Pl's Prop. Stip. Facts at 2, Nos. 6a-e; ECF 49, Def's Obj. to Pl's Prop. Stip. Facts at 3 (agreeing that Fact Nos. 6a-e are supported by the record); App'x Ex. 3, Kennedy Dep. 84:24-85:3 (acknowledging that the John F. Kennedy family came to own the lawn urn with the acquisition of the Hickory Hill property in 1955); *id*. 85:23-86:4 (confirming that the Joseph P. Kennedy family acquired the urn in connection with the 1957 sale of the Hickory Hill property); *id*. 89:17-90:3 (agreeing that the lawn urn transferred to the Robert F. Kennedy family in connection with the 1967 conveyance of the Hickory Hill property); *see also* App'x Ex. 1, Dabbiere Dep. 64:12-65:7, 92:9-93:15 (testifying to the reasons Defendant believes that the urn conveyed to him in 2009).

Because there is no genuine dispute as to any material fact that the urn conveyed to Defendant when he purchased the Hickory Hill property in 2009, Defendant is entitled to judgment as a matter of law on Count II of Plaintiff's First Amended Complaint.

**B.      There Is No Evidence of a Valid Gift of the Urn.**

In Count II, Plaintiff alleges that, before the 2009 real estate transaction, Mrs. Ethel Kennedy "gave all ownership rights and title to the Urn that was located at Hickory Hill to her daughter, plaintiff Kerry Kennedy."  Am. Compl. ¶ 8.

"In order for the gift to be valid, there must be under Virginia law: (1) a present intention on the part of the donor to make the gift; (2) a delivery, either actual or constructive; and (3) such delivery must divest the donor of all dominion and control over the property and place it in the donee."  *Close v. Lloyd*, No. 3:09CV526, 2010 WL 1286690, at *3-4 (E.D. Va. Mar. 26, 2010); *see also In re Garrett*, 45 B.R. 190, 192-93 (Bankr. E.D. Va. 1984) (citing *Taylor v. Smith*, 199 Va. 871, 102 S.E.2d 160 (1958)); *Payne v. Tobacco Trading Corp.*, 179 Va. 156, 163-64, 18 S.E.2d 281, 284 (1942) ("In order for there to be a gift of personal property there must be an intention to

make a present gift accompanied by a delivery of the thing given or the means of obtaining it. Or, stated conversely, a gift cannot be made to take effect in possession in the future. Such a transaction amounts only to a promise to make a gift, and being without consideration is invalid."). In addition to these common law requirements, Virginia Code § 55.1-102 states, in pertinent part, that "[n]o gift of any personal property is valid (i) unless conveyed by deed or will or (ii) unless the donee or a person claiming under the donee has and remains in actual possession of such personal property."

In this case, there is no evidence that Plaintiff came into the actual possession of the urn as required by Virginia Code § 55.1-102. Nor was any written instrument prepared to evidence the gift or the transfer of ownership such as to comply with Virginia Code § 55.1-102. It is also undisputed that Mrs. Ethel Kennedy filed no gift tax return concerning the urn. Mansfield Decl. ¶¶ 24, 27, 29-21; App'x Nos. 19-21, 24-26. Moreover, Plaintiff did not produce any documents that she exchanged with Mrs. Ethel Kennedy about the alleged gift, Mansfield Decl. ¶¶ 3-4, and Plaintiff could identify no such documents during her deposition. App'x Ex. 3, Kennedy Dep. 219:3-13.

Remarkably, Plaintiff could not recall the date or substance of any conversation with Mrs. Ethel Kennedy about the alleged gifting of the urn. *Id.* 210:19-25, 211:16-19 210:19-25, 211:16-19 226:17-227, 221:7-14. Plaintiff testified that Mrs. Ethel Kennedy permitted each of her children to select three items from Hickory Hill. *Id.* at 218:6-10. When asked to describe any subsequent conversation with Mrs. Ethel Kennedy about the three items that Plaintiff selected, Plaintiff testified, "well, I don't recall a discussion about it. I just said these are the three items, or I let her know that, or I let Anne Phelan [Mrs. Ethel Kennedy's Personal Assistant] know that. It was not a very formal process." *Id.* at 221:7-14.

Therefore, there is no genuine dispute as to any material fact that Plaintiff's alleged "gift" is invalid under Virginia law because Plaintiff never came into the actual possession of the urn and because there is no written instrument to evidence the gift or any transfer of ownership. *See In re Garrett*, 45 B.R. at 192-93 (gift was invalid even though donor had requisite intention to make a gift for lack of a "deed or will" or "actual possession").

## C. The June 2010 Agreement Lacks Consideration, Entitling Defendant to Judgment as a Matter of Law on Plaintiff's Count I.

"An enforceable contract requires mutual assent and mutual consideration." *Powell v. Bank of Am., N.A.*, No. 2:11-CV-438, 2011 WL 6130806, at *2 (E.D. Va. Dec. 8, 2011) (citing *Plaskitt v. Black Diamond Trailer Co.*, 164 S.E.2d 645, 653 (Va. 1968)). Whether consideration is adequate is a question of law for the court. *Veilleux v. Merrill Lynch Relocation Mgmt., Inc.*, 226 Va. 440, 446 (1983); *BWT Mgmt., Inc. v. Gayle*, 49 Va. Cir. 365 (1999).

Plaintiff alleges that her "ownership rights in and entitlement to physical possession of the Urn" constitute her "consideration" in making the June 2010 Agreement, Am. Compl. ¶ 15, and that the "consideration" consists "of each party's concessions of their disputed positions regarding ownership and conveyance, or not, of the Urn at the time of the conveyance of the Hickory Hill property." *Id*. ¶ 38. However, Plaintiff cannot establish that she has any valid ownership rights in the urn, *see supra*, Sections IV(A) and IV(B), rendering the June 2010 Agreement unenforceable for lack of consideration.

"A promise to forbear the exercise of a legal right is adequate consideration to support a contract." *Greenwood Assocs., Inc. v. Crestar Bank*, 248 Va. 265, 268-69, 448 S.E.2d 399, 402 (1994). Critically, "[m]ere forbearance, without an agreement to that effect, is not sufficient consideration for a promise, even though the fact of forbearance was induced by the promise." *Greenwood Assocs., Inc*., 248 Va. at 269, 448 S.E.2d at 402. "Such an agreement is absolutely

essential." *Id.* (citation omitted). Here, the record establishes that Plaintiff has no valid ownership rights in the urn, *see supra* Sections IV(A) and IV(B), and therefore Plaintiff has no valid legal claim about which she could agree to forebear as consideration for the June 2010 Agreement. Under Virginia law, "the forbearance to prosecute an invalid, worthless or unfounded claim is not a consideration recognized by the law as valuable." *Hooff v. Paine*, 172 Va. 481, 485-87, 2 S.E.2d 313, 314-15 (1939). Therefore, even if Plaintiff could show valid ownership rights in the urn (which she cannot), there is no evidence of the "absolutely essential" agreement from Plaintiff that she will forebear in her exercise of a valid legal right. In sum, because the June 2010 Agreement lacks consideration, it is unenforceable and Defendant is thus entitled to judgment as a matter of law on Plaintiff's Count I.

## V.     CONCLUSION

For the foregoing reasons, Defendant requests that the Court enter summary judgment in his favor on Plaintiff's claims in the First Amended Complaint.

This 12th day of March, 2021.

|                                          | s/Benjamin L. Williams                |
| Joel D. Bush, II                         | Benjamin L. Williams (VSB No. 88591)  |
| *Admitted Pro Hac Vice*                  | COZEN O'CONNOR                        |
| Joe P. Reynolds                          | 1200 19th Street NW                   |
| *Admitted Pro Hac Vice*                  | Washington, D.C. 20036                |
| KILPATRICK TOWNSEND & STOCKTON LLP       | Tel: (202) 912-4859                   |
| 1100 Peachtree Street, Suite 2800        | Fax: (202) 861-1905                   |
| Atlanta, GA  30309-4528                  | BLWilliams@cozen.com                  |
| Telephone: (404) 815-6500                |                                       |
| Facsimile: (404) 815-6555                |                                       |
| jbush@kilpatricktownsend.com             |                                       |
| jreynolds@kilpatricktownsend.com         |                                       |

*Counsel for Defendant Alan J. Dabbiere*

## CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.

This 12th day of March, 2021.

s/Benjamin L. Williams
Benjamin L. Williams (VSB No. 88591)

*Counsel for Defendant Alan J. Dabbiere*